[Crim. No. 6070.    First Dist., Div. Two.    Dec. 18, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES VIRGIL DAHLKE et al., Defendants and Appellants.

Dennis K. Bromley, under appointment by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Robert R. Granucci and James B. Cuneo, Deputy Attorneys General, for Plaintiff and Respondent.

SHOEMAKER, P. J.—Defendants James Dahlke and Richard Moorhead appeal from judgments of conviction on three counts of burglary.

The record shows that early in the morning of May 5, 1966, Bill Garrett observed two men whom he identified as defendants Dahlke and Moorhead applying crowbars to the rear door of a hardware store located in Cloverdale, California. Garrett asked a companion to call the police, and the message was relayed to Officer Green of the Cloverdale Police Department.

Officer Green arrived at Sciani's Hardware Store at approximately 1:30 a.m. and saw defendants emerging from behind the store. Green accosted defendants in a parking lot, ordered them to halt and to approach with their hands above their heads. Green then asked defendants what they were doing in the vicinity of the hardware store and also asked them to identify themselves. Neither man responded. After Garrett had approached and identified defendants as the two men who had been attempting to force entry into the hardware store, Green conducted a pat search of Dahlke and found a flashlight, pair of gloves, and a crowbar hooked over his belt and extending down the inside of his right pants leg.

After Green had placed both defendants under arrest, he was joined by Officer Luccehsi, who conducted a search of Moorhead. During the course of this search, both defendants were ordered to lie face down on the ground, and Green kept his gun pointed at them. Moorhead was found to be in possession of a crowbar, a flashlight, and a pair of gloves.

Defendants were then handcuffed and driven to the police station, where they were advised that they had a right to an attorney, that they could make a telephone call, and that anything they said could be used against them. Neither defendant made any reply. Defendants' handcuffs were then removed, and they were asked to empty their pockets. The contents included the keys to an automobile.

In response to police questioning, defendants stated that

they were from out of town and that defendant Moorhead had a car which was located at the Oaks Motel in Cloverdale. When Moorhead was asked whether he had any objection to the police going and looking in his car, he shrugged his shoulders and replied, ''Do what you want.''

The police officers then proceeded to the Oaks Motel and searched Moorhead's car, which was found to contain clothing, boots, belt buckles, money bags, a saw, an axe, ropes, and bottles of liquor. After examining the contents of the car, the officers returned the various items to the car, locked it and left it at the motel.

On the afternoon of the following day, May 6, Officer Gallagher of the Eureka Police Department arrived in Cloverdale with warrants for defendants' arrest and took them into his custody. Before leaving Cloverdale, Gallagher removed the contents of Moorhead's car. Gallagher then drove defendants to Eureka after advising them, at the commencement of the trip, that anything they said could be used against them, that they were entitled to remain silent, that they were entitled to an attorney, and that one would be appointed if they could not afford one. Dahlke made no response, but Moorhead indicated that he intended to hire his own attorney.

Gallagher testified that he interrogated each defendant separately. He took two statements from each defendant, and all four interviews were tape recorded. The transcript of the first interview with Moorhead indicated that he was advised, at the outset, of his right to an attorney, his right to remain silent and that anything he said could be used against him in a court of law. At the commencement of the second interview, Moorhead was asked if he had been advised of his rights and replied that he had.

After telling the officer that he acquired the articles found in his car by purchase from a stranger in a parking lot for $100, Moorhead stated that the crowbar which was in his possession at the time of his arrest had been brought from Nevada and that he frequently packed a crowbar for protection.

The transcript of the interview with Dahlke shows that Gallagher first asked him whether it was correct that he had previously been advised of his rights to an attorney and that anything he said might be used against him in court. Dahlke indicated that he had been so advised. At the commencement of the second interview, Gallagher told Dahlke that he had advised him of his rights earlier and then repeated that he

had a right to an attorney and that anything he said could be used against him.

Dahlke told the officer that he bought the things found in Moorhead's car for $100 from a stranger who took him to his apartment where he was shown the articles and the purchase was made. When asked about the crowbar found on his person, Dahlke gave the same answer as Moorhead.

Various other witnesses for the prosecution testified that their respective premises had been burglarized and identified various items in Moorhead's car as part of the merchandise taken in the burglaries. Additionally, witness Louis Thietje recalled that both defendants had been in his bar on the afternoon preceding the burglary and that they had had occasion to enter the men's restroom, through the wall of which entry had been made into the premises.

Officer Gallagher investigated one of the burglaries and removed a sample of aluminum roof coating from around the skylight. He sent the sample to the Federal Bureau of Investigation, where the same was analyzed and found to match in texture, type and composition a smear on a glove found on one of the defendants. Another burglary produced certain marks on pieces of plywood which were examined under the microscope and compared with test marks made by the two crowbars found in defendants' possession. The marks on the wood were found to have been made by the two crowbars.

Defendants offered no evidence on their own behalf.

Defendants' first contention is that the items taken from Moorhead's car were the product of an illegal search and seizure and, since defendants properly raised this objection in the court below, should have been excluded from evidence. Defendants assert that the police searched the car without a search warrant and that said search was neither incidental to their arrest nor made pursuant to their consent. Since the People concede that the search was made without a warrant and was not incidental to defendants' arrest, the sole question before this court is whether defendants can be deemed to have consented thereto.

Defendants do not dispute the evidence that when Moorhead was asked whether he had any objection to the police searching his car, he indicated that he had none, shrugged his shoulders and said, "Do what you want." However, defendants assert that Moorhead's apparent consent was vitiated by the fact that he had not previously been advised either of his right to refuse consent, his right to remain silent or his right

to have counsel appointed in the event he could not afford to retain one. (See *Miranda* v. *Arizona* (1966) 384 U.S. 436, 444 [16 L.Ed.2d 694, 706, 86 S.Ct. 1602, 10 A.L.R.3d 974].) Defendants also contend that Moorhead's consent was not voluntary but the result of a complete assertion of authority by the police.

Defendants' contention that a consent is invalid when obtained from a defendant who is in police custody and who has not first been advised of his right to refuse consent may not be sustained. In the recent case of *People* v. *Campuzano* (1967) 254 Cal.App.2d 52 [61 Cal.Rptr. 695], defendant consented to a search of his house at a time when he was handcuffed and under arrest and had not been advised of his right to withhold consent to a warrantless search. The court nevertheless held the consent to be valid, stating, "The test on appeal is whether there is substantial evidence of consent in fact. The law does not prescribe any particular form of words to be spoken by the officer as a prerequisite. The evidence here supports the finding that the consent was genuine, and hence the search was legal." (P. 58.) Despite a vigorous dissent asserting that defendant should have been advised of his rights under the Fourth Amendment, a petition for hearing in the California Supreme Court was denied on October 25, 1967.

There is likewise no merit to defendants' contention that Moorhead's consent was invalid because not preceded by a warning of his right to remain silent or his right to appointed counsel. In *People* v. *Smith* (1966) 63 Cal.2d 779 [48 Cal.Rptr. 382, 409 P.2d 222], one of the defendants, Mrs. Walker, consented to a search and also made certain incriminating statements at a time when she was under arrest and had not been advised of her right to counsel or her right to remain silent. Although the court held that it was error to admit the incriminating statements into evidence, the court upheld the validity of the consent.

Defendants' contention that Moorhead's consent must be deemed the result of an implied assertion of authority by the police is also untenable. Whether an apparent consent was in fact voluntarily given in a particular case or was in submission to an express or implied assertion of authority is a factual question to be determined in the light of all the circumstances. (*People* v. *Smith, supra,* at p. 798; *Castaneda* v. *Superior Court* (1963) 59 Cal.2d 439, 442 [30 Cal.Rptr. 1, 380 P.2d 641] ; *People* v. *Michael* (1955) 45 Cal.2d 751, 753 [290 P.2d 852].) The fact that a defendant is in police

custody at the time of a request for his permission to search is a circumstance of particular significance, but it is not conclusive. (*People* v. *Smith, supra,* at p. 798; *Castaneda* v. *Superior Court, supra,* at p. 443; *People* v. *Gorg* (1955) 45 Cal.2d 776, 782, fn. 2 [291 P.2d 469].)

Although defendants contend that the instant case is factually indistinguishable from the situation presented in *Castaneda* v. *Superior Court, supra,* and *People* v. *Shelton* (1964) 60 Cal.2d 740 [36 Cal.Rptr. 433, 388 P.2d 665], wherein the consents were held not to be voluntary, a reading of the two cases leads unerringly to the conclusion that they are not controlling. "In *Castaneda* the evidence showed that the defendant repeatedly attempted to lead the officers away from his home after purportedly giving his consent to search it. Clearly, such acts were evidence of the lack of free and voluntary consent to the search." (*People* v. *Woods* (1966) 239 Cal.App.2d 697, 703 [49 Cal.Rptr. 266].) Likewise, in *Shelton,* the involuntary nature of defendant's consent was shown by "his subsequent refusal to assist the officers in gaining access to the apartment. . . ." (*People* v. *Shelton, supra,* at p. 745.)

In the case at bar, there is no evidence suggesting that Moorhead's consent to the search of his car was followed by any conduct tending to cast doubt upon the voluntary nature of such consent. It is true that the consent was given while Moorhead was in police custody and that he had previously been searched at gun point and taken in handcuffs to the police station. However, the precautions in question were clearly both necessary and reasonable, since the police were dealing with two men who had been apprehended while attempting to force their way into a store, who might well have been armed and who were in fact carrying crowbars. When Moorhead consented to the search of his car, he was no longer handcuffed and had been advised that he had a right to an attorney and that anything he said could be used against him. In response to police questioning, defendants freely stated they were from out of town, that Moorhead had a car and that it was located at a particular motel. Moorhead similarly stated that he had no objection to a search of the car. Under these circumstances, it clearly cannot be said that Moorhead's consent was involuntary as a matter of law and that the trial court erred in overruling the defense objection thereto.

Defendants also assert that even if Moorhead can be

deemed to have given a valid consent to the search of his car by the Cloverdale police, there was certainly no consent to the subsequent search of said vehicle by the Eureka police. This argument is without merit. Since the Cloverdale police could have taken possession of the evidence found in Moorhead's car at the time of their initial search thereof, the mere fact that they delayed doing so for reasons of convenience and left the various articles in the car until after the Eureka police had arrived and taken custody of defendants did not render the subsequent seizure unreasonable. (*People* v. *Webb* (1967) 66 Cal.2d 107, 120 [56 Cal.Rptr. 902, 424 P.2d 342].)

Defendants also contend that the court erred in refusing to exclude from evidence the verbal statements made by defendants during their interrogation by Officer Gallagher. Defendants assert that the statements in question were not immediately preceded by a warning which was sufficient to meet the requirements of *Miranda* v. *Arizona, supra*. Defendants thus point out that at the commencement of the first interview with Moorhead, Gallagher failed to advise him of his right to the services of an attorney paid by the state, and at the commencement of the second interview, failed to advise him of any of his constitutional rights. As for Dahlke, defendants point out that neither of his interviews with Gallagher were preceded by any statement of his right to remain silent or his right to an attorney paid by the state. Although defendants tacitly concede that both of them had previously been adequately advised of their rights when they were being taken from Cloverdale to Eureka, defendants contend that this warning affords no basis for admitting the Gallagher interviews into evidence because it was too far removed from said interviews in point of time.

Defendants also assert that the verbal statements made to Gallagher ought to have been excluded under the rule of *People* v. *Aranda* (1965) 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265], because each defendant gave a different version of the manner in which he had obtained the goods taken in the burglaries and, by so doing, demonstrated that the other was lying. Defendants assert that extrajudicial statements of this nature clearly result in the implication of the nondeclaring codefendant within the meaning of *Aranda* and that the trial court was therefore under a duty to try the two defendants separately or delete from the extrajudicial statements of each those portions which were damaging to the other.

The People concede that the admission into evidence

of the statements made to Gallagher was violative of both the *Miranda* and *Aranda* decisions. However, the People take the position that the other evidence of defendants' guilt was so overwhelming as to preclude any possibility that defendants were prejudiced by such error. This contention is sound.

Defendants were apprehended after a witness observed them attempting to effect forcible entry into a hardware store during the early hours of the morning. Both were in possession of crowbars, gloves and flashlights. Articles found in defendant Moorhead's car were identified by the burglary victims as having been taken from their respective premises. In addition, there was evidence that crowbars in defendants' possession had been used to enter one of the burglarized premises and that a smear on one of the defendants' gloves was acquired while entering another of the burglarized premises. Under such circumstances, we are satisfied that the admission into evidence of defendants' extrajudicial statements was harmless beyond a reasonable doubt (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 828].)

Judgments affirmed.

Agee, J., and Taylor, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 14, 1968.