[Crim. No. 6547.    First Dist., Div. Two.    May 28, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT WALTER SJOSTEN, Defendant and Appellant.

---

Willard F. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and John T. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

TAYLOR, J.—Defendant appeals from a judgment of conviction entered on a jury verdict finding him guilty of burglary (Pen. Code, § 459). He contends that: his arrest was unlawful, certain evidence was improperly admitted, and he was not properly advised of his rights under the Fourth and Sixth Amendments of the Constitution of the United States. We have concluded that there is no merit in any of these contentions.

As no questions concerning the sufficiency of the evidence to sustain the conviction are raised, a brief review of the pertinent facts will suffice. On Tuesday, December 20, 1966, just before midnight, Miss Dolores Morales was returning to her home at 529 Diamond Street in South San Francisco. She observed an unoccupied Buick parked on the street between her house and the house next door. The street was deserted. Shortly after she entered her house, she heard a car door slam. She looked out a front window and saw a man, subsequently identified as appellant, putting something into the Buick. She watched him as he moved about and around 12:30 a.m. alerted her mother, Mrs. Lola Belle Morales. The two women watched appellant from a front window for about half an hour.

- Mrs. Morales saw appellant as he opened the gate from the street and entered a neighbor's yard directly across the street. A few minutes later, he came back out, stopped, looked around and walked to the Buick carrying something in his hand. He opened the car door, looked around again and walked across the street into the yard holding a flashlight. About 1 a.m., Mrs. Morales called the police and reported a

prowler. While she waited for the police to arrive, she saw appellant walking on her side of the street up the Diamond Street hill toward a dead end. He then crossed the street and disappeared between two houses.

Shortly thereafter, Officers Smith and Solari of the South San Francisco Police Department arrived in separate cars in response to Mrs. Morales' report. Smith noticed the Buick parked in the street but saw no one. He talked to Mrs. Morales, checked the Buick and noted its manifold was slightly warm. Both of the officers proceeded on foot to search for the prowler. They saw no one as they climbed the Diamond Street hill. Officer Smith then heard a noise, possibly a twig snapping, and saw appellant coming down the street with a flashlight in his hand about three houses from the dead end of Diamond Street. Officer Smith did not know where appellant had come from but Mrs. Morales, who was still watching, saw appellant emerge between the two houses, and meet the officers.

Officer Smith approached appellant and said: "Good evening, sir, do you live in the area?" Appellant responded: "Yes, I live just down the street." Smith asked for identification. Appellant produced a driver's license bearing a Palo Alto address, and explained he was no longer living there but on Hemlock Street, which was about half a mile away. When Officer Smith asked for the exact Hemlock Street address, appellant replied: "I'm not really living there; I am living in San Francisco." Appellant identified the Buick as his vehicle and indicated he parked there because of faulty brakes and was looking for a telephone to call a friend on Hemlock Street. When invited to check the brakes, the officers did so and found them operative. Smith then admonished appellant: "You have the right to remain silent and that anything you say can and will be used against you in a court of law.." Appellant then responded: "That's all right. I know them already" and accompanied the officers.

While appellant remained outside with Officer Solari, Officer Smith re-entered the Morales house. Mrs. Morales looked out the window and identified appellant as the prowler she had seen earlier. Officer Smith explained that because none of the officers had seen appellant prowling, they could not make an arrest but she could make a citizen's arrest if she so desired. Mrs. Morales indicated that she wanted appellant arrested but asked Officer Smith to make the arrest for her because she was in her robe and nightgown. Later, she signed a citizen's arrest form.

Officer Smith went back outside and asked appellant: "Sir, do you mind if I look in your vehicle?" Appellant answered: "No, go right ahead." Officer Smith directed his flashlight beam into the Buick and through the window observed a tape recorder, a fishing reel, clothes, suitcases and a G.E. Solid State stereo record player. Appellant indicated that he was carrying his things in the car as he had no permanent address. Shortly thereafter, Officer Smith arrested appellant, indicating it was a citizen's arrest made at the direction and request of Mrs. Morales for prowling in the nighttime.

Later that same day, Terry Megna, who lived at 616 Telford Avenue, just around the corner from the Morales home, reported that his G.E. Solid State stereo record player was missing. He put the record player in the garage around 12:30 a.m. on December 20 and discovered it missing when he came home on December 21. Subsequently, Megna identified the record player found in the Buick as his. Appellant did not take the stand or present any evidence on his behalf.

The first contention on appeal is that the trial court erred in admitting the record player into evidence as it was seized during a search made incident to an unlawful arrest.

As indicated above, Mrs. Morales, after observing appellant's activities, called the police. When Officer Smith returned, Mrs. Morales looked out the window, identified appellant as the prowler and asked Officer Smith to execute the arrest for her because she was dressed only in her night clothes. She watched from the window as Officer Smith took appellant into custody. Appellant contends that the arrest was invalid because an officer cannot be so delegated to take custody and that, in any event, the arrest was effectuated at too great a distance from the complaining citizen.

Section 837 of the Penal Code provides, so far as pertinent: "A private person may arrest another: 1. For a public offense committed or attempted in his presence." The term "public offense" includes misdemeanors (Pen. Code, §§ 15, 17; *Burks* v. *United States,* 287 F.2d 117; *People* v. *Redmond,* 246 Cal.App.2d 852 [55 Cal.Rptr. 195]). While we have found no authority construing the term "in his presence," as used in section 837 of the Penal Code, we note that the identical language in section 836 of the Penal Code relating to a peace officer's authority to make arrests has been liberally construed (*People* v. *Burgess,* 170 Cal.App.2d 36, 41 [338 P.2d 524]). "Presence" is not mere physical proximity but is determined by whether the offense is apparent to the

officer's senses (*People* v. *Brown,* 45 Cal.2d 640 · [290 P.2d 528] ; *People* v. *Bradley,* 152 Cal.App.2d 527, 532 [314 P.2d 108]). We hold that the term "in his presence" in section 837 of the Penal Code must be similarly construed. Accordingly, since Mrs. Morales saw appellant prowling in the neighborhood, the offense was committed *in her presence.* Promptness, clearly exhibited here, is the only remaining requirement of a valid citizen's arrest for a misdemeanor without a warrant (*Hill* v. *Levy,* 117 Cal.App.2d 667, 670 [256 P.2d 622]). ■ We hold that Mrs. Morales had the right to make the arrest pursuant to section 837, subdivision 1.

■ As to the delegation of her authority to another person, section 839 of the Penal Code provides: "Any person making an arrest may orally summon as many persons as he deems necessary to aid him therein." This statute impliedly authorizes the delegation of the physical act of taking an offender into custody. Frequently, as under the circumstances of this case, it is most prudent for a private citizen to summon a police officer to assist in making the arrest.[1]

Thus, in *People* v. *Wolfgang,* 192 Cal. 754 [221 P. 907], a night watchman saw the defendant steal two bottles of milk and called him to halt. Instead, the defendant ran, followed by the night watchman and a police officer on the beat, to whom the watchman pointed out the defendant and related what occurred. The officer, who had not seen the theft, made the arrest. In *Hill* v. *Levy, supra,* following a disturbance in a restaurant, one of the diners called the police after an unsuccessful attempt to obtain help from the manager. The police arrived and the arrest was made. In *People* v. *Harris,* 256 Cal.App.2d 455 [63 Cal.Rptr. 849], a citizen stopped a car he had seen striking another car and called the police. The citizen explained the situation to the officer, who placed the suspect under arrest for a misdemeanor, hit-and-run violation. On appeal, the court found that a legal citizen's arrest had been made.

Significantly, in all of the above cases, as in the instant case, the officer assisting the citizen in making the arrest pursuant to section 837 of the Penal Code, had not witnessed the offense. Thus, the authority of Officer Smith to make the arrest at the request of Mrs. Morales is well established (*People* v. *Harris, supra,* p. 459). ■ The fact that she did not physically confront appellant is not significant. It is suffi-

---

[1]Cf. *People* v. *Score,* 48 Cal.App.2d 495 [120 P.2d 62], where the citizen was assaulted by the defendant before the arrival of the police.

cient that she directed the officer to make the arrest and observed him doing so from her window. We conclude that appellant was lawfully detained on a citizen's arrest pursuant to section 837 of the Penal Code.

■ Appellant further argues that the legality of the arrest was vitiated by the officer's failure to inform him that he was under arrest, as required by section 841 of the Penal Code.[2]

Sufficient compliance with section 841 was established by Officer Smith's testimony that he informed appellant that he was being taken into custody for prowling pursuant to a citizen's arrest requested by Mrs. Morales. In any event, appellant was apprehended at the very time he was observed prowling in the neighborhood and it is well settled that where a party is apprehended in the commission of an offense or in fresh pursuit afterwards, failure to comply with section 841 does not invalidate the arrest (*People* v. *Harris, supra*; *People* v. *Valenzuela,* 171 Cal.App.2d 331 [340 P.2d 685]; *People* v. *Herman,* 163 Cal.App.2d 821 [329 P.2d 989]; *People* v. *Pool,* 27 Cal. 572).

■ Defendant asserts that even if his arrest was lawful, the record player was inadmissible as the product of a nonconsentual and unlawful search. Our Supreme Court recently cautioned that the scope of a lawful search incident to a citizen's arrest is much more restrictive than that allowed officers (*People* v. *Sandoval,* 65 Cal.2d 303, 311 [54 Cal.Rptr. 123, 419 P.2d 187]).[3] We need not, however, consider this interesting question here. The uncontroverted evidence indicates that the record player was clearly visible from the outside of the car (*People* v. *Norman,* 252 Cal.App.2d 381 [60 Cal.Rptr. 609]; *People* v. *Nieto,* 247 Cal.App.2d 364 [55 Cal.Rptr. 546]).

■ A "search" implies prying into hidden places for that which is concealed and that the object searched for had been

---

[2] "The person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it, except when the person making the arrest has reasonable cause to believe that the person to be arrested is actually engaged in the commission of or an attempt to commit an offense, or the person to be arrested is pursued immediately after its commission, or after an escape.

"The person making the arrest must, on request of the person he is arresting, inform the latter of the offense for which he is being arrested."

[3] The court said in footnote 5 that a citizen effecting such an arrest is authorized to only take from the person arrested all offensive weapons that he may have about his person (Pen. Code, § 846), not to conduct a search for contraband incidental to arrest, or to seize such contraband on uncovering it, nor to search the premises.

hidden or intentionally put out of the way. Merely looking at that which is in open view is not a search (*Bielicki* v. *Superior Court*, 57 Cal.2d 602, 605 [21 Cal.Rptr. 552, 371 P.2d 288]). The use of the flashlight by Officer Smith did not make his observations a search (*People* v. *Cerda*, 254 Cal.App.2d 16, 23 [61 Cal.Rptr. 784]; *People* v. *Gibson*, 220 Cal.App. 2d 15, 23 [33 Cal.Rptr. 775]). ▮ We conclude that the record player was not obtained as the result of an unlawful search and was properly admitted into evidence.

Our finding that the discovery here was not the result of *a search* renders irrelevant defendant's contentions that there can be *no valid search by consent* unless defendant is informed of his right to refuse permission to search and his right to remain silent and have appointed counsel. However, even if Officer Smith's conduct had constituted a search, defendant's arguments would be contrary to the California law. This jurisdiction, along with a number of others, has not adopted the doctrine of *United States* v. *Blalock* (E.D. Pa. 1966) 255 F.Supp. 268, upon which defendant relies (*State* v. *Forney*, 181 Neb. 757 [150 N.W.2d 915]; *State* v. *McCarty*, 199 Kan. 116 [427 P.2d 616]; *People* v. *Chaddock*, 249 Cal. App.2d 483, 485 57 Cal.Rptr. 582]; *People* v. *Dahlke*, 257 Cal.App.2d 82 [64 Cal.Rptr. 599]; *People* v. *Smith*, 63 Cal. 2d 779 [48 Cal.Rptr. 382, 409 P.2d 222]).

▮ Finally, appellant asserts that his statements to the police were not admissible as he was not properly advised of all his rights, including his right to appointed counsel as required by *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

In the first place, the explicit holding of *Miranda* is that the principles there announced ''deal with the protection which must be given to the privilege against self-incrimination when the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way.'' (P. 477 [16 L.Ed.2d at p. 725].) Here, it appears that appellant was not arrested until after the items were seen in the car.[4] Thus, prior thereto, there was only an investigatory process and no custodial interrogation (cf. *People* v. *Weger*, 251 Cal.App.2d 584, 602-603 [59 Cal.Rptr. 661], holding that *Miranda* does not apply where a citizen is merely stopped and questioned

---

[4]The record is somewhat unclear on the exact sequence of events. Appellant was apparently advised of some of his rights before he was identified as the prowler by Mrs. Morales, but not taken into custody until after the items were seen in the car.

pursuant to the daytime loitering statute, Pen. Code, § 647, subd. (e)). Even assuming otherwise, no objections were made at the trial to the testimony concerning appellant's statements about his residence, the condition of the brakes, and that he was looking for a telephone. No other statements which might be regarded as incriminating were introduced. Accordingly, any deficiency in the warning given would not be material.

Affirmed.

Shoemaker, P. J., and Agee, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 24, 1968.