[Crim. No. 15189. Second Dist., Div. One. Dec. 23, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN CARTER BEAL, Defendant and Appellant.

Linn Davis, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of possessing marijuana.

In an information filed in Los Angeles on December 26, 1967, John Carter Beal and David Kegher were charged with possessing marijuana on September 25, 1967. Defendants pleaded not guilty. By stipulation the cause was submitted on the testimony contained in the transcript of the proceedings had at the preliminary hearing; each side reserved the right to introduce additional evidence and further any exhibits received at the preliminary hearing were deemed received in evidence subject to the court's ruling. Beal testified in his own behalf. The court found each defendant guilty as charged. Beal was committed to the Youth Authority for the term prescribed by law. A timely notice of appeal was filed. (Welf. & Inst. Code, § 1739.)

A résumé of some of the facts is as follows: at about 5:50 a.m. on September 25, 1967, Officer Reed of the narcotics detail of the South Gate Police Department was patrolling in the area of Tweedy Boulevard and California Avenue in South Gate. This was a high arrest area for narcotics violations, there having been over fifty arrests in and around the location during the previous 90 days. Numerous informants stated that one could buy contraband narcotics in the area at

any time of the day or night. There was a taco stand, a doughnut stand and a laundromat (the latter two stayed open all night) in the immediate vicinity. As the officer passed by he noticed Beal and one Potter squatting down behind a 1963 green Ford automobile. The Ford car was parked in front of the taco stand in a large asphalt-covered parking lot. Beal and Potter appeared to be smoking a cigarette, taking intermittent short drags from the cigarette and passing it back and forth between themselves in a manner frequently employed by marijuana smokers. The officer was an expert in the recognition of marijuana and how it is used. The manner in which Beal and Potter were smoking made the officer suspicious and he, the officer, went into the parking lot where Beal and Potter were located. The officer shone his flashlight into the eyes of Beal and Potter. The pupils of their eyes were dilated, their eyelids appeared heavy and their faces appeared flaccid or relaxed. The officer asked the two men what they were doing and they replied that they were just talking. The officer inquired as to who owned the automobile and Beal replied that it was his car. The officer noted that codefendant Kegher was seated in the front seat with his head on the right window and inquired as to what was wrong with him. Beal replied that Kegher had had too much to drink and had passed out. The officer asked Kegher to get out of the car and in response to a question by the officer Kegher said that he had not been drinking. Kegher had dilated pupils, heavy eyelids and a flaccid face. The officer upon the basis of his knowledge and experience concluded that all three of the men were under the influence of marijuana.

Upon the front seat of the car the officer saw a pack of Zigzag cigarette papers. The officer asked Beal whether he had been ''smoking any weed'' and Beal replied in the negative. The officer then asked Beal, ''Do you have any in your car?'' and Beal again replied in the negative. The officer then said, ''Do you care if I look?'' and Beal said in effect that he had no objection to such and to ''go ahead.'' In the car the officer found under the right front seat a box containing two polyethylene bags of marijuana. The officer showed the material to the three men and placed them under arrest for possession of marijuana. Later the officer found a cigarette package on an armrest of the car and it also contained marijuana. The officer was unable to find the cigarette which Beal and Potter were smoking when he first observed them in the squatting position.

Appellant now contends that the officer had no justification to stop and talk to him and his associates, that the consent to search the car and the subsequent seizure of the contraband were illegal in that the officer did not tell Beal that he, Beal, had a right to refuse to consent to the search and that there was insufficient evidence that appellant had any dominion or control over the marijuana found in the car. We are persuaded that there is no merit to any of the contentions so raised.

California courts have repeatedly held that a police officer may question a person outdoors at night when the circumstances would lead a reasonable man in a like position to believe that an investigation is necessary to the proper discharge of his duties. (See *People* v. *Mickelson,* 59 Cal.2d 448, 450, 452 [30 Cal.Rptr. 18, 380 P.2d 658] ; *People* v. *Cruppi,* 265 Cal.App.2d 9, 13 [71 Cal.Rptr. 42].) To determine whether a particular stop for questioning is reasonable, the courts balance the need for action taken so that the officer can properly discharge his duty against the extent and nature of the interference with personal security. (See *Terry* v. *Ohio,* 392 U.S. 1, 21-23 [20 L.Ed.2d 889, 905-907, 88 S.Ct. 1868] ; *People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92, 95-96 [41 Cal.Rptr. 290, 396 P.2d 706].)

Without repeating the facts, suffice it to say that the circumstances were such that the officer had more than reasonable cause to investigate the situation. Circumstances short of probable cause for the making of an arrest will justify an officer's stopping pedestrians or motorists for questioning. (See *People* v. *Hawxhurst,* 264 Cal.App.2d 398, 401 [70 Cal.Rptr. 253] ; *People* v. *McGlory,* 226 Cal.App.2d 762, 764-765 [38 Cal.Rptr. 373] ; *People* v. *Cruppi,* 265 Cal. App.2d 9, 13 [71 Cal.Rptr. 42].)

It is readily apparent that the officer upon shining a light into appellant's face saw that appellant had many of the symptoms of marijuana use and reasonably concluded that appellant was then and there under the influence of a narcotic. Appellant could have been legally arrested at that point. (See *People* v. *Newberry,* 204 Cal.App.2d 4, 8 [22 Cal. Rptr. 23] ; *People* v. *Alcala,* 169 Cal.App.2d 468, 470-471 [337 P.2d 558] ; Pen. Code, § 647, subd. (f).)

The search of appellant's car was reasonable under the circumstances. The fact that appellant was not advised by the officer that he could refuse to consent to the search is of no consequence. It is true that there are some federal cases which hold to the effect that there can be no effective waiver of

Fourth Amendment rights unless police officers seeking a suspect's consent to a search advise him of his right to refuse and to insist upon a search warrant. There are also many federal cases which hold to the contrary. (See *Gorman* v. *United States*, 380 F.2d 158, 164; *United States* v. *Rushing*, 18 U.S.C.M.A. 298, 305; *Rosenthall* v. *Henderson*, 389 F.2d 514, 516; *United States* v. *Vickers*, 387 F.2d 703, 707; *Byrd* v. *Lane*, 398 F.2d 750, 754-755.)

Many states have declined to require warnings as conditions precedent to valid consent searches. (See *State* v. *Oldham*, 92 Idaho 124 [438 P.2d 275]; *State* v. *McCarty*, 199 Kan. 116 [427 P.2d 616, 619-620]; *State* v. *Andrus*, 250 La. 765 [199 So.2d 867, 873]; *Lamot* v. *State*, 2 Md.App. 378 [234 A.2d 615, 619]; *Morgan* v. *State*, 2 Md.App. 440 [234 A.2d 762, 763]; *State* v. *Forney*, 181 Neb. 757 [150 N.W.2d 915, 917-918]; *Commonwealth* v. *Anderson*, 208 Pa. Super. 323 [222 A.2d 495, 498-499]; *State* v. *Leavitt*, —— R.I. —— [237 A.2d 309]; *Weeks* v. *State*, (Tex. Crim. App.) 417 S.W.2d 716, 719, cert. denied 389 U.S. 996 [19 L.Ed.2d 494, 88 S.Ct. 500].)

California cases have held repeatedly that there is no requirement for police warnings of any type as a condition precedent to a valid consent search. (See *People* v. *Cirilli*, 265 Cal.App.2d 607, 610-611 [71 Cal.Rptr. 604]; *People* v. *Slade*, 264 Cal.App.2d 188, 190 [70 Cal.Rptr. 321]; *People* v. *De Leon*, 263 Cal.App.2d 155, 156 [69 Cal.Rptr. 653]; *People* v. *Sjosten*, 262 Cal.App.2d 539, 545-546 [68 Cal.Rptr. 832]; *People* v. *Lyles*, 260 Cal.App.2d 67, 67-68 [66 Cal.Rptr. 799]; *People* v. *Richardson*, 258 Cal.App.2d 23, 31 [65 Cal.Rptr. 487]; *People* v. *Dahlke*, 257 Cal.App.2d 82, 86-87 [64 Cal.Rptr. 599]; *People* v. *Chaddock*, 249 Cal.App.2d 483, 485-486 [57 Cal.Rptr. 582]; *People* v. *Roberts*, 246 Cal.App.2d 715, 729 [55 Cal.Rptr. 62].)

We are persuaded that when a defendant freely consents to a search there has been no violation of his Fourth Amendment rights. (*Castanada* v. *Superior Court*, 59 Cal.2d 439, 442 [30 Cal.Rptr. 1, 380 P.2d 641]; *People* v. *Roberts*, 246 Cal. App.2d 715, 727 [55 Cal.Rptr. 62].) The trial court's scrutiny of the voluntariness of the consent is far more protection to a defendant than the recital of some warning by the police. The search in this instance was clearly with the consent of appellant.

 The evidence is also clearly sufficient to support the

judgment. It was shown that appellant exercised dominion and control over the contraband, he had knowledge of its presence and he had knowledge of its narcotic character. We have approached the matter as an appellate court as we must. We have assumed in favor of the judgment every fact which the trial judge reasonably could have deduced from the evidence.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 26, 1969. Peters, J., was of the opinion that the petition should be granted.