[Crim. No. 16554. Second Dist., Div. Two. May 11, 1970.]

THE PEOPLE, Plaintiff and Respondent, v
ROY CHAVEZ HIDALGO, Defendant and Appellant.

## COUNSEL

William A. Herreras, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Michael L. Abrams, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**ROTH, P. J.**—Roy Hidalgo appeals from a judgment of conviction of a violation of Health and Safety Code section 11911, possession of dangerous drugs (amphetamine sulphate tablets). Appellant was charged by information filed on December 4, 1967, and convicted by a jury on November 25, 1968. A motion to suppress evidence under Penal Code section 1538.5 was denied on November 19, 1968.

On November 5, 1967, at about 7 p.m., Los Angeles Deputy Sheriffs Smith and Barlow were on patrol near Whittier Boulevard in Los Angeles County. As they approached a parking lot located near a beer bar, they saw two men acting in a suspicious manner standing beside the open trunk of a Corvair. One of the men, appellant, threw what turned out to be the

car keys under the car, while the other ran off with some object and entered the beer bar. He was not pursued by either officer. The officers approached appellant. When they arrived the trunk was closed.

Officer Barlow asked appellant, "what he was doing in the trunk of the vehicle and if the vehicle belonged to him. . . . The [appellant] stated that he had not been in the trunk of the car; that he did not own the vehicle; and that he was merely relieving himself or urinating in front of the car. . . . A. Yes. And then I asked . . . 'If you don't own the car, what were you doing in the trunk of the car?' And the [appellant] said, 'Well, it is my car. I just purchased it.' . . . A. We asked him his name. The [appellant] stated his name was Sol Zubiet. And that the registration in the vehicle was on the windshield and that he lived at—I don't recall the address. I cannot recall the name of the street either."

Appellant was asked if he had any identification. He produced a paid telephone bill with the name Hope Guerra. Appellant's name was neither Zubiet or Guerra.

One of the officers retrieved the car keys which appellant had thrown under the car and asked what they were doing there. Appellant replied that that was where he always concealed keys. Appellant was then asked whether he could identify the contents of the trunk. Officer Smith testified: "A. I felt if he could identify the contents, why, we could establish positive ownership of the vehicle. Q. So that when you asked him that question, you were trying to identify whether or not Mr. Hidalgo owned the vehicle? A. I was trying to connect him with the vehicle or his rights to be in possession of it, yes. Q. At that time you suspected car burglary or car tampering, did you not? A. Yes, I did." Officer Barlow testified: "Q. Officer, when you first approached this activity, what did you suspect? . . . A. Well, I don't really know whether I suspected narcotics activity or probably possibly attempted theft of a vehicle or burglary of a vehicle which is quite prevalent in that area. Q. But you would not eliminate any three of those? A. No."

In response to the query of Officer Smith appellant said tools were in the trunk. The officer held out the keys in his hand and appellant pointed out the trunk key. The officer's testimony as to what next occurred was: "Q. What was next said or done? A. He then asked me if I was going to look in the trunk and I asked him if there was anything in there that he didn't want us to see. At this time he replied, 'No. Go ahead and look.' "

The trunk was opened by Officer Smith. Inside the trunk was a bag of tools and a black Harris & Frank shopping bag which was sitting upright and open. Inside the black shopping bag were "five brown bags double wrapped with rubber bands." The officer could see the "five brown bags"

by looking over the top and into the bag. The officer could not see what was in any of the brown bags without opening them.

Officer Smith removed one of the brown bags, opened it and discovered what was later determined to be amphetamine tablets. He then placed appellant under arrest. Officer Barlow read the *Miranda* warnings to appellant.

Officer Smith testified: "Q. Can you tell us as a police officer what excited you towards this other object? A. What attracted me to it? Q. Yes. A. Similarity of bags I have seen in the past made up in the same general manner, wrapped in that manner. Q. So it is your testimony similarity in the past indicates some kind of objectivity? A. Triggered a reaction in my mind, yes."

On cross-examination, Officer Smith, when handed a similar brown bag, testified it had a "ripply feeling" like "pills or beans." He was asked to open the bag. It contained beans.

■ Appellant argues that there was no reason to detain him or if there was that his conversation with the officers constituted detention of sufficient length to require that he be given *Miranda* warnings before the search of the trunk. Neither argument is sound. The evidence clearly shows that the officers were merely making an investigation provoked by suspicious circumstances. California courts have consistently held that police officers not only may but have the duty to investigate suspicious circumstances. (*People* v. *Perez*, 259 Cal.App.2d 371, 377 [66 Cal.Rptr. 473]; *People* v. *Beal*, 268 Cal.App.2d 481, 484 [73 Cal.Rptr. 787]; *People* v. *Hawxhurst*, 264 Cal.App.2d 398 [70 Cal.Rptr. 253].) The actions of both appellant and his companion justified investigation.

■ The officers were obviously in the process of investigating when permission was requested to look into the trunk. They were not required to advise appellant of any rights he had to refuse consent to look into the trunk. We recognize that a police officer's inquiry may in certain situations create some degree of compulsion. Nevertheless, "California cases have held repeatedly that there is no requirement for police warnings of any type as a condition precedent to a valid consent search." (*Beal, supra,* at p. 485; *People* v. *Superior Court,* 71 Cal.2d 265, at p. 270, fn. 7 [78 Cal.Rptr. 210, 455 P.2d 146]; *People* v. *Martinez,* 259 Cal.App.2d Supp. 943, 945 [65 Cal.Rptr. 920]; *People* v. *Roberts,* 246 Cal.App.2d 715, 729 [55 Cal.Rptr. 62].) ■ The record shows no evidence of any kind of compulsion by the officers. The question of whether appellant freely consented to having the officer look into the trunk was one of fact and was decided by the trial

court against appellant. (*People* v. *Dahlke,* 257 Cal.App.2d 82, 87 [64 Cal.Rptr. 599]; *Beal, supra,* at p. 285.)

■ Appellant's final argument is that his consent to the officer to open the trunk was limited and did not specifically include consent to search the open shopping bag. The bag, however, like the tools, was in clear view when the trunk compartment of the car was opened.

It is clear from the portions of the record excerpted at the outset that ownership verification was uppermost and in the mind of one officer and that there was suspicion of at least three probable crimes in the mind of the other. Neither officers told appellant what was in their minds and the consent to look into the trunk was not limited.

■ Although it is clearly the law in California that a search may not " 'be justified by what it turned up.' " (*Irwin* v. *Superior Court,* 1 Cal.3d 423, 428 [82 Cal.Rptr. 484, 462 P.2d 12]; *People* v. *Mickelson,* 59 Cal.2d 448, 454 [30 Cal.Rptr. 18, 380 P.2d 658].) The extent to which Fourth Amendment protections may be invaded depends upon the circumstances and the objective reasonableness of the officers. (*Irwin* v. *Superior Court, supra,* at p. 426; *People* v. *McGrew,* 1 Cal.3d 404, 412 [82 Cal.Rptr. 473, 462 P.2d 1]; *People* v. *Edwards,* 71 Cal.2d 1096, 1104 [80 Cal.Rptr. 633, 458 P.2d 713].) The record at bench shows no illegal police conduct prior to the permission freely granted to search the trunk. It shows a background which justified a detention short of arrest and one which called for on-the-spot investigation by the officers. Pursuant to their duty to investigate the officers obtained a free consent from appellant to open the trunk. In *People* v. *Haven,* 59 Cal.2d 713 [31 Cal.Rptr. 47, 381 P.2d 927], the court says at page 719: "A search or seizure made pursuant to a valid consent before any illegal police conduct occurs is obviously not a product of illegal conduct."

We do not discuss appellant's final argument that he was prejudiced by having been seen in the court corridors "with manacles and . . . manacled to his alibi witness."

The judgment is affirmed.

Herndon, J., and Fleming, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 16, 1970 Wright, C. J., did not participate therein.