[Crim. No. 19561. Second Dist., Div. Five. Apr. 4, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
MANUEL RAMOS, Defendant and Appellant.

## Counsel

Michael S. Mink, under appointment by the Court of Appeal, and Lawrence F. Nelson, Jr., for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Barbara T. King, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**REPPY, J.—**

### Procedure

Defendant pleaded "not guilty" to a charge of assault with intent to commit murder, in violation of section 217 of the Penal Code. A jury trial was had. After the People had examined three witnesses, marked a revolver as People's I for identification, and questioned one or more of the witnesses with respect to said revolver, defendant's attorney moved to suppress the revolver and any other evidence discovered at defendant's home at the time of his arrest on the grounds of illegal search and seizure. Although defendant's attorney had no excuse for his failure to make this motion—which all agreed was in the nature of a motion under Penal Code section 1538.5—at the proper time, the trial court, feeling defendant should not suffer from any dereliction on his attorney's part, held a full hearing on the Penal Code section 1538.5 motion out of the presence of the jury. The motion was denied.

The jury found defendant guilty of assault with a deadly weapon in violation of Penal Code section 245, as if it were "a lesser but necessarily included offense" in that charged. Defendant's motion for new trial was denied. Probation was denied, and defendant was committed to the Youth Authority for the term prescribed by law. Defendant appeals from the judgment.

### Background and Facts Essential to Resolution of Issues

Frederick Mendivil attended a large party in Wilmington on March 28, 1970, at the home of Sherie Welch.

About midnight the party was breaking up so Mendivil went outside to

look for a ride home. He saw a young lady named Terry Welch by a trash can throwing up. Mendivil tried to help Terry, whom he had known about two years, into the house. Another individual named Dickie told Mendivil that he should get away, that he was watching the girl. He tried to fight with Mendivil. Mendivil turned around and saw a person in a white T-shirt and fire coming out of a gun. The person in the white T-shirt said, "Did you feel it," and then he started running. Mendivil could not see this person's face, but he noticed that he was short and stocky, had black hair, and was of Mexican descent.

Mendivil was taken to the hospital where he was operated on for a stomach wound. Mendivil testified that the gun used by the man in the T-shirt looked like People's Exhibit I and that it was a small revolver.

Sherie Welch, hostess of the party, was a witness to the shooting. When Mendivil and Dickie were having the argument, she identified defendant as one of the individuals standing nearby. She saw defendant go to his car. She next saw him walking towards her and Mendivil, approximately 12 feet from them. She saw a small dark-colored gun in defendant's right hand. He fired three shots at the ground and one at Mendivil and said. "This is what you are going to get for messing around with my partner." Mendivil smiled and put out his hand as though to shake hands, and defendant started to laugh. Dickie said to defendant, "Come on, let's split. You shot him." Then Dickie and defendant walked rapidly to the car from which defendant had come.

Detective James A. Raines of the Los Angeles County Sheriff's Department was assigned to investigate the Mendivil shooting. On March 29, 1970, at 5:30 a.m. he talked with Sherie Welch at her residence. Sherie identified defendant as the man who had shot Mendivil.[1] She said she did

---

[1]Although no issue was raised on appeal regarding lack of probable cause for arrest it was raised at the hearing (out of the presence of the jury) on the section 1538.5 motion. Although Officer Raines' testimony on direct examination was skimpy with respect to exactly what Sherie Welch had told him regarding her observations of the shooting incident and her identification of defendant as the perpetrator of the assault, this was probably because she had just testified in the prosecution's case in chief and her testimony was fresh in the minds of Officer Raines, the trial court, and respective counsel. In any case, at defense counsel's request, a sheriff's department supplementary report was introduced in evidence for the purpose of the section 1538.5 hearing, and that document filled in the details of Officer Raines' testimony setting forth the date and address of the occurrence, the name of the victim (Mendivil), and the name of the suspect (Manuel Joey Ramos), stating: "Witness [Sherie] Welch positively identified the above suspect as the person who had shot the victim." The officers were justified in relying on a known citizen's eyewitness account of the incident to establish probable cause for arrest. (*People* v. *Craycraft*, 1 Cal.App.3d 947, 950 [82 Cal.Rptr. 154]; *People* v. *King*, 270 Cal.App.2d 817, 821 [76 Cal.Rptr. 145].)

not know defendant's address but she knew that Sally Rodriguez was defendant's wife's maiden name. Sherie also gave him a description of defendant.

Raines called the Firestone Station and obtained an address for a Sally Rodriguez, who turned out to be defendant's mother-in-law. He did not find defendant there. Defendant's mother-in-law told Raines that defendant and his wife lived in Compton. Raines obtained an address for defendant from the Compton Police Department records. He arrived at defendant's address at approximately 8:30 a.m. that same day. It was a one-story triplex. Raines knocked at the door nearest the street. A woman answered and in reply to his question told him that defendant lived in the back apartment. Raines and his partner, Deputy Henri, knocked in a normal fashion on the front door of the back apartment. When there was no response they knocked louder "in case somebody was asleep." Raines knocked approximately six times; then he heard sounds of one or more persons walking within the apartment. Raines announced in a loud clear voice that he was from the sheriff's office and was there "conducting an investigation for [sic] Manuel Ramos." Then he heard what sounded like fast running or walking within the apartment. Deputy Henri went around to the side of the house and looked through a window into the front room. He observed defendant standing by the front door clad only in his shorts. Officer Henri yelled, "Open up, Sheriff's Department" several times. Defendant looked over, saw Henri, and then ran into the bedroom. Henri found that the window was open, stepped through it, and ran across the front room into the bedroom where he apprehended defendant. Henri entered the house because defendant fit the description of the suspect and because he knew that the suspect had possession of a gun.[2]

The next thing Raines saw was his partner, Henri, opening the front door. Defendant was standing in the doorway between the bedroom and the living room. Raines asked him if he was Manuel Ramos. When defendant said "Yes", Raines told him he was under arrest for a violation of Penal Code section 217. Raines' partner then advised defendant "[t]hat he

---

[2]Although no issue was raised on appeal concerning the officers' compliance with the requirements of Penal Code section 844, it was raised at the hearing on the section 1538.5 motion. We find that Penal Code section 844 was substantially complied with. The officers knocked, identified themselves as being from the sheriff's department, and announced their purpose, to wit: "conducting an investigation for [sic] Manuel Ramos." Further, the fact that the officers had reason to believe that defendant was armed and dangerous (having been told that he had shot Mendivil the night before) excused any failure to comply with Penal Code section 844 in its entirety. (*People* v. *Stewart,* 11 Cal.App.3d 242, 247 [89 Cal.Rptr. 707]; *People* v. *Myers,* 8 Cal.App.3d 268, 272 [87 Cal.Rptr. 246]; *People* v. *Bryant,* 5 Cal.App.3d 563, 569 [85 Cal.Rptr. 388].)

could remain silent; that anything he said could be and would be used against [him] in a court of law; [that] he had a right to have an attorney present before [they] talked to him, and [that] if he could not afford to hire an attorney one would be appointed to represent him free of charge." Defendant said that he understood his rights. He was then asked if he wished to talk about the case. Defendant said, "Sure, I will tell you what happened." Raine asked defendant if he had been at Sherie Welch's house the previous evening, and defendant replied that he had. Raines asked him if he had fired the shot. Defendant said that he had been there but that Robert Gonzales had fired the shots.[3] Raines asked him if he had any guns in the house. Defendant replied, "No, go ahead and look." Raines said, "Is it all right for us to look around?" Defendant replied, "Sure, man. Go ahead." Defendant's wife was sitting on the corner of the bed, and Raines asked her to stand up. She said, "Why?" Raines replied that he wanted "to look under the mattress for a weapon." She stood up. Raines looked under the mattress and observed a .22 caliber black revolver with a short barrel and two boxes of .22 cartridges.

## I. *Problem of Consent to Search*

Defendant claims that People's Exhibit I (the revolver) was the product of an illegal search and that the trial court erred in denying his motion to suppress. Defendant's position is that the search was illegal (1) because he was not warned of his right to refuse consent to the search and (2) because defendant's consent was not freely and voluntarily given. A case in point is *People* v. *Tremayne,* 20 Cal.App.3d 1006 [98 Cal. Rptr. 193]. There the court fully analyzed the postulate that a consent given without prior advisement of "the right" to refuse such consent is violative of the Fourth Amendment, noting that the Constitutional protection is only against unreasonable searches and seizures "and does not confer a right not to be searched or not to be searched without a warrant." The Court of Appeal concluded, "Consent to a search confers authority to search; establishes the reasonable nature of a search premised thereon; is not a waiver of a constitutional right; and is effective without warning the person giving the consent he might refuse to consent." (P. 1015.) (See also *People* v. *Thomas,* 12 Cal.App.3d 1102, 1107, fn. 1 [91 Cal.Rptr. 867] [dicta to the same effect]; *People* v. *Hidalgo,* 7 Cal.App.3d 525, 529 [86 Cal.Rptr. 660].)

The real issue here is whether the consent was freely and voluntarily

---

[3] At trial defendant testified that he had done the shooting, explaining that he had first told this story to the police because he was scared.

given. ■ The fact that a person was not warned that he had a right to refuse to consent to a search is a circumstance to be considered in determining whether his consent was freely and voluntarily given. (*People* v. *Superior Court,* 71 Cal.2d 265, 270, fn. 7 [78 Cal.Rptr. 210, 455 P.2d 146]; *People* v. *Stark,* 275 Cal.App.2d 712, 715 [80 Cal.Rptr. 307].) ■ The fact that an accused is under arrest at the time he consents to a search (as defendant was in this case) does not establish as a matter of law that his consent was not given freely and voluntarily (*People* v. *Smith,* 63 Cal.2d 779, 798 [48 Cal.Rptr. 382, 409 P.2d 222]; *People* v. *Cockrell,* 63 Cal.2d 659, 667 [47 Cal.Rptr. 788, 408 P.2d 116]). ■ Whether a consent is freely and voluntarily given is a question of fact. (*People* v. *Smith, supra,* 63 Cal.2d 779, 798; *People* v. *Michael,* 45 Cal.2d 751, 753 [290 P.2d 852].)

■ The officer did not directly ask defendant if they could search his house, but asked whether defendant had any guns in the house. This question in one respect implies that they would have asked to search if defendant had given an alternative answer to their question. However, defendant suggested that the police officers search his home for weapons before any actual request was made by the officers to do so. At no time did he withdraw his suggestion that the officers search his house or act in any way that would suggest that his consent to the search had not been freely given. Prior to commencement of the search, Officer Raines tested the voluntariness of defendant's suggestion that the officers look for weapons by asking, "Is it all right for us to look around?" Whereupon, defendant replied, "Sure, man. Go ahead." Defendant's words and conduct clearly showed that he acquiesced in the officers' search of his bedroom. (*People* v. *Carrillo,* 64 Cal.2d 387, 393 [50 Cal.Rptr. 185, 412 P.2d 377]; *People* v. *Perillo,* 275 Cal.App.2d 778, 782 [80 Cal.Rptr. 160].)

■ Where, as in the instant case, there is substantial evidence supporting the conclusion that consent was given voluntarily, a finding to this effect, implicit in the order admitting evidence obtained pursuant to such consent, is binding on appeal. (*People* v. *Bilderbach,* 62 Cal.2d 757, 763 [44 Cal.Rptr. 313, 401 P.2d 921]; *People* v. *Toulson,* 272 Cal.App.2d 181, 185-186 [77 Cal.Rptr. 271]; *People* v. *Roberts,* 246 Cal.App.2d 715, 727 [55 Cal.Rptr. 62].)

II. *Problem of Lesser Included Offense*

■ Defendant was charged in the information as follows: "ASSAULT WITH INTENT TO COMMIT MURDER, IN VOLATION OF SECTION 217, PENAL CODE, a felony, committed as follows: That the said MANUEL JOEY

RAMOS, on or about the 28th day of March, 1970, . . . . did willfully, unlawfully and feloniously and with malice aforethought, assault Fred Mendivil, a human being, with intent to commit murder." Defendant was found guilty of ". . . Assault with a deadly weapon, a felong [*sic*] in violation of 245 Penal Code of State of California, a lesser but necessarily included offense than that charged in Count I of the information." Defendant claims that the judgment must be reversed because he was convicted of a crime that was not necessarily included in the offense charged.[4]

We turn, therefore, to the case of *People* v. *McCurdy*, 165 Cal.App.2d 592, 595 [332 P.2d 350], in which it was held that assault with a deadly weapon was a lesser necessarily included offense within Penal Code section 217. The authority of this case is weakened by dicta in the Supreme Court's opinion in *People* v. *Marshall*, 48 Cal.2d 394, 403-404 [309 P.2d 456], to the effect that assault with a deadly weapon is not a lesser necessarily included offense within the statutory definition of assault with intent to commit murder.

The *McCurdy* court seems to have arrived at its conclusion by setting up, apparently inadvertently, an alternative premise incompatible with the facts. In analyzing Penal Code section 245, it lumped together the two separate acts set forth in that section (assault with a deadly weapon and assault by means of force likely to produce great bodily injury) and laid considerable emphasis on the fact that assault by means of force likely to produce great bodily injury is obviously a lesser included offense in a charge of assault with intent to commit murder.[5] The charging language

---

[4]We note that where the accusatory pleading charging assault with intent to commit murder specifically mentions the use of a deadly weapon, assault with a deadly weapon may properly be found to be a lesser necessarily included offense. (*People* v. *Marshall*, 48 Cal.2d 394, 405 [309 P.2d 456].) This circumstance was not present in the instant case.

Since the transcript of the preliminary hearing is not a part of the record on appeal, technically we have no information as to what was shown to be the nature of the charged offense in that proceeding. It seems inconceivable that the use of the deadly weapon would not have been shown at the preliminary hearing in this matter. However, even if we had such a transcript before us, it could not be used to augment the charge so as to make assault with a deadly weapon a lesser included offense within the offense charged here. (*People* v. *Leech*, 232 Cal.App.2d 397, 399-400 [42 Cal.Rptr. 745].)

[5]Thus the *McCurdy* court stated, "We hold that by every reasonable intendment the quoted language charging the commission of an assault with intent to commit murder necessarily implies the employment of a deadly instrumentality or a 'means of force likely to produce great bodily injury' so that such language, of necessity, charges a violation of section 245 of the Penal Code. It would seem unrealistic to deny that a charge of attempted murder implies the employment of a means likely to produce great bodily injury." (P. 595.) And, again at page 597, the court states: "To argue that a charge of the most aggravated of all assaults, to wit, assault with

in *McCurdy* was identical to the language used in the information in the instant case and made no mention of assault by means of force likely to produce great bodily injury. In all probability the court, in *McCurdy,* was not confronted with the logic that the two acts mentioned in Penal Code section 245 must be treated separately.[6] Although assault by means of force likely to produce great bodily injury may well be a lesser included offense within Penal Code section 217, nevertheless, assault with a deadly weapon is not. ▇ "The test in this state of a necessarily included offense is simply that where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense." *(People* v. *Greer,* 30 Cal.2d 589, 596 [184 P.2d 512]; *In re Hess,* 45 Cal.2d 171, 174 [288 P.2d 5]; *People* v. *Krupa,* 64 Cal.App.2d 592, 598 [149 P.2d 416].) ▇ Not every assault with intent to commit murder implies the employment of a deadly weapon. In light of the above analysis and because our view conforms to the Supreme Court's discussion in *People* v. *Marshall, supra,* 48 Cal.2d 394, 403-404, we do not feel that *People* v. *McCurdy, supra,* 165 Cal.App.2d 592, should govern this case.

However, a finding that assault with a deadly weapon is not a lesser necessarily included offense within Penal Code section 217 does not dispose of the issue as presented here.

▇ Defendant requested that an instruction on assault with a deadly weapon be given, and it was given as requested. The only theory upon which defendant could have offered such an instruction was that assault with a deadly weapon was a lesser included offense. The trial court, following defendant's lead, gave an instruction on its own motion to the effect that assault with a deadly weapon was such an included offense. Discussions among counsel and the trial court conducted prior to the determination of what instructions were to be given clearly indicate that all parties believed that assault with a deadly weapon and simple assault were lesser necessarily included offenses in the crime actually charged. The evidence clearly supports a verdict of assault with a deadly weapon. In fact defendant testified that he shot the victim, although asserting that it was only after Mendivil drew a knife on him. It was, of course, to defendant's advantage that the jury be allowed to consider the lesser charge.

---

intent to commit murder, does not embrace the lesser offense defined in section 245 is to argue that an assault with intent to commit murder does not necessarily involve the use of a deadly instrumentality or a *'means of force likely to produce great bodily injury.'* " (Italics theirs.) The court further states: "There is merit in respondent's argument that in the foregoing group of decisions there is recognition of the substantive principle that assault with intent to commit murder necessarily includes the *class* of assaults punishable under section 245." (Italics added.) (P. 597.)

[6]We note the use of the disjunctive "or" in Penal Code section 245.

The case was thus submitted to the jury with defendant's consent and acquiescence on the theory that assault with a deadly weapon was a lesser, necessarily included offense. ■ The philosophy of the rule which forbids conviction of an offense which is not charged in the accusatory pleading and which is not a lesser but necessarily included offense within the crime charged is that due process requires that a defendant be given notice of not only the offense charged but also of what can be considered a lesser included offense, to the end that the defendant will have an opportunity to prepare and present a defense. (*People* v. *West,* 3 Cal.3d 595, 612 [91 Cal.Rptr. 385, 477 P.2d 409]; *People* v. *Blunt,* 241 Cal.App.2d 200, 204 [50 Cal.Rptr. 440].)

Defendant's own actions not only show that he realized that he was put to the task of defending against the alternate charge of assault with a deadly weapon, but also show that he wanted the jury to think that that offense was all that he really was defending against.

Moreover, appellate decisions have long held that where a defendant acquiesces in his conviction of a lesser offense, albeit not a necessarily included offense, he cannot later be heard to complain. "Since a defendant who requests or acquiesces in conviction of a lesser offense cannot legitimately claim lack of notice, the [trial] court has jurisdiction to convict him of that offense." (*People* v. *West, supra,* 3 Cal.3d 595, 612.)

■ Noting that defendant in fact requested an instruction on the elements of assault with a deadly weapon and fully acquiesced in the procedure whereby the instant case was sent to the jury on the theory that assault with a deadly weapon was a necessarily included offense in the charge of assault with intent to commit murder, we conclude that, ". . . the effect of the proceedings had in the trial court . . . was . . . an informal amendment of the information to include a charge which was supported by the evidence although not by the original information; . . ." (*People* v. *Hensel,* 233 Cal.App.2d 834, 840 [43 Cal.Rptr. 865]; see also *People* v. *Francis,* 71 Cal.2d 66, 74-75 [75 Cal.Rptr. 199, 450 P.2d 591]; *People* v. *Chavira,* 3 Cal.App.3d 988, 991-992 [83 Cal.Rptr. 851]; *People* v. *Powell,* 236 Cal.App.2d 884, 888 [46 Cal.Rptr. 417].) The assumption of an informal amendment of the information in these cases and in the case at bar is no more than an effort to put the procedural steps at the trial level in order, since the fundamental requirements of notice to the defendant have been achieved.

After the jury verdict, and prior to the judgment, defendant herein moved for a new trial raising for the first time the contention that assault

with a deadly weapon was not a lesser included offense. In denying defendant's motion, the trial court indicated that it still believed that assault with a deadly weapon was an offense necessarily included in a charge of assault with intent to commit murder. Although the trial court erred in its reasoning, it properly denied the motion for new trial because defendant had been a consenting party to an informal amendment of the information, thus sanctioning the submission of the case to the jury with instructions on both assault with a deadly weapon and assault with intent to commit murder, and to the effect that the former was a lesser included offense within the latter. (*Davey* v. *Southern Pacific Co.,* 116 Cal. 325, 329 [48 P. 117]; *People* v. *Evans,* 249 Cal.App.2d 254, 257 [57 Cal.Rptr. 276].)

The judgment is affirmed.

Kaus, P. J., and Aiso, J., concurred.

A petition for a rehearing was denied April 26, 1972, and appellant's petition for a hearing by the Supreme Court was denied May 31, 1972. Peters, J., was of the opinion that the petition should be granted.