[L. A. No. 29605.   In Bank.   Jan. 23, 1969.]

DONALD JOSEPH FREEMAN, Plaintiff and Respondent,
   v. DEPARTMENT OF MOTOR VEHICLES, Defendant
   and Appellant.

Thomas C. Lynch, Attorney General, and G. A. Strader, Deputy Attorney General, for Defendant and Appellant.

Bradley, Wagy, Bunker, Hislop, Gibbons & Leddy, Albert M. Leddy and George V. Denny for Plaintiff and Respondent.

McCOMB, J.—Defendant Department of Motor Vehicles (hereinafter referred to as "the DMV") appeals from a judgment granting a peremptory writ of mandate commanding it to set aside a decision suspending plaintiff's driver's license.

Deputy Sheriff Fowler, seeing plaintiff in an apparent violation of section 23102, subdivision (a), of the Vehicle Code (misdemeanor drunk driving), "stopped" him. He then summoned the assistance of a member of the highway patrol. Officer Byrd responded, arriving at the scene about 15 or 20 minutes after plaintiff had been "stopped" by the deputy

sheriff. Prior to Officer Byrd's arrival, plaintiff got out of his car. At the time Officer Byrd arrived, plaintiff was at a nearby service station.

Officer Byrd determined that plaintiff was under the influence of alcohol "due to the odor of alcohol, his bloodshot eyes and very irrational actions." Plaintiff admitted to Officer Byrd that he had been driving his car at the time the deputy sheriff "stopped" him.

Officer Byrd arrested plaintiff and asked him to submit to a chemical test to determine the alcohol content of his blood, but plaintiff refused. Plaintiff was informed that his driving privilege would be suspended if he refused to take such a test.

Thereafter, a sworn statement by Officer Byrd was filed with the DMV, and the DMV suspended plaintiff's driver's license under section 13353 of the Vehicle Code.[1] At plaintiff's request, an informal administrative hearing was held, at which Officer Byrd testified and his sworn statement was reviewed. The DMV made findings adverse to plaintiff and suspended his driver's license.

Plaintiff then filed a petition for writ of mandamus in the superior court, which granted the writ on the ground that plaintiff's arrest had not been lawful, since the arresting officer had not observed him committing the alleged misdemeanor offense. (Pen. Code, § 836.)

■ Question: *If a peace officer "stops" a motor vehicle driver for an alleged misdemeanor traffic offense committed in his presence, may a valid arrest be made by another peace*

---

[1]Vehicle Code section 13353 provides in part: "(a) Any person who drives a motor vehicle upon a highway shall be deemed to have given his consent to a chemical test of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if *lawfully arrested* for any offense allegedly committed while the person was drivng a motor vehcle under the influence of intoxicating liquor. The test shall be incidental to a lawful arrest and administered at the direction of a peace officer having *reasonable cause* to believe such person was driving a motor vehicle upon a highway while under the influence of intoxicating liquor. Such person shall be told that his failure to submit to such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of six months.

"(b) If any such person refuses the officer's request to submit to a chemical test, the department, upon receipt of the officer's sworn statement that he had reasonable cause to believe such person had been driving a motor vehicle upon a highway while under the influence of intoxicating liquor and that the person had refused to submit to the test after being requested by the officer, shall suspend his privilege to operate a motor vehicle for a period of six months. No such suspension shall become effective until 10 days after the giving of written notice thereof, as provided for in subdivision (c)." (Italics added.)

*officer who was summoned by the first peace officer but did not see the driver commit the alleged offense?*

*Yes.* Section 836 of the Penal Code provides that a peace officer may make an arrest without a warrant "[w]henever he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence."

In the instant case, Officer Byrd, who wrote out the citation charging plaintiff with a violation of section 23102, subdivision (a), of the Vehicle Code, did not see him commit the alleged offense. However, Officer Byrd was not the sole arresting officer. Deputy Sheriff Fowler, by "stopping" plaintiff for the alleged offense and detaining him pending arrival of an officer of the highway patrol, initiated, and thereby participated in, the arrest. (See Pen. Code, §§ 834, 835.)[2] Deputy Sheriff Fowler did not himself complete the arrest, but it was completed by a person he had summoned to aid him in making the arrest, as he was entitled to do under section 839 of the Penal Code. That section reads: "Any person making an arrest may orally summon as many persons as he deems necessary to aid him therein."

Deputy Sheriff Fowler related to Officer Byrd what he had seen; plaintiff confirmed to Officer Byrd the fact that he had been driving the automobile involved at the time Deputy Sheriff Fowler made the "stop"; and, according to Officer Byrd's sworn statement, plaintiff showed physical signs of being intoxicated.[3] Under the circumstances, Officer Byrd had

---

[2] See *Fallis* v. *Department of Motor Vehicles*, 264 Cal.App.2d 373 [70 Cal.Rptr. 595], in which one peace officer "stopped" the defendant, and another arrived on the scene thereafter, completed the arrest procedure, and made out the arrest reports. Although the Court of Appeal sometimes refers to "the arresting officer" and at other times to "the arresting officers," it would appear that the court considered that the arrest was made by both the officer who "stopped" the defendant and the officer who completed the arrest and made out the arrest reports. Thus, it is said: "The arresting officers were not present [at the hearing]; licensee did not request their presence and did not object to the use of Officer Berube's sworn statement and arrest reports on the ground of hearsay." (P. 376.) Likewise, it is said, "One of the arresting officers [the one who completed the arrest and made out the arrest reports] had advised licensee of his rights under the Fifth and Sixth Amendments. . . ." (P. 384.)

[3] Officer Byrd's sworn statement reads, in part: "I had reasonable cause to believe the person arrested had been driving a motor vehicle upon a highway while under the influence of intoxicating liquor. Among those actions which led me to that belief were:

"Subj. was stopped by Kern Co. Sheriff's Deputy K. Fowler #148 for 23102(a) C.V.C. [Officer Byrd could not have included this information in his sworn statement unless he had knowledge of its truthfulness. Admittedly, he did not see Deputy Fowler "stop" plaintiff. However, it can reasonably be inferred that Deputy Fowler told him what had

reasonable cause to believe that plaintiff had committed the alleged offense; and Deputy Sheriff Fowler, to Officer Byrd's knowledge, having seen the act constituting the alleged offense and having participated in the arrest, the requirements of section 836 of the Penal Code were met.

In *People* v. *Sjosten,* 262 Cal.App.2d 539 [68 Cal.Rptr. 832] (hearing denied by Supreme Court), a citizen observed the defendant prowling in the nighttime and called the police, who thereupon arrested the defendant. After holding that the citizen had the right to make an arrest under section 837, subdivision 1, of the Penal Code,[4] the Court of Appeal held that the arrest made by the officer was valid, stating at page 544 [5] : "As to the delegation of her authority to another person, section 839 of the Penal Code provides: 'Any person making an arrest may orally summon as many persons as he deems necessary to aid him therein.' This statute impliedly authorizes the delegation of the physical act of taking an offender into custody."

In *People* v. *Harris,* 256 Cal.App.2d 455 [63 Cal.Rptr. 849], a citizen, who had observed the defendant commit a misdemeanor "hit-run" violation, pursued the defendant and detained him while another person went for the police. After the defendant was delivered to a police officer, the latter informed him that he was under arrest for the "hit-run" violation. In discussing the effect of the police officer's assuming custody of the defendant after his detention by the citizen, the Court of Appeal stated: "An arrest is more than a transient momentary incident. It continues through a transfer of custody of the accused from a citizen to a peace officer." (Pp. 459-460 [3].)

---

occurred, since the only persons present at the time the "stop" was made were Deputy Fowler, plaintiff, and plaintiff's guest, and plaintiff testified that Deputy Fowler did not say why he made the "stop." Under the circumstances, the only way Officer Byrd could have obtained reliable information that Deputy Fowler had "stopped" plaintiff "for 23102(a) C.V.C." was for the deputy to have told him what had happened.] Shortly after my arrival & after questioning the subj. I determined he was under the influence of alcohol due to the odor of alcohol, his bloodshot eyes & very irrational actions. I had to use force to get him inside the patrol car.

"....

"When I first asked the subj. to perform a balance test he refused by saying he would have me fired & arrested for chewing gum while talking to him. He stated he wouldn't take a blood, breath, or urine test because he didn't like me. He also stated he liked my partner (Stafford). He wouldn't take the test for him either."

[4]Section 837, subdivision 1, of the Penal Code provides: "A private person may arrest another:

"1. For a public offense committed or attempted in his presence."

Similarly, the arrest made by Officer Byrd was not a "transient momentary incident," but had its beginning in the action taken by Deputy Sheriff Fowler. In other words, the arrest begun by Deputy Sheriff Fowler continued through the transfer of custody from him to Officer Byrd.

In both *Harris* and *Sjosten*, it was a citizen who observed commission of the offense and detained the offender until a peace officer arrived, whereas in the present case a peace officer observed commission of the offense and detained plaintiff until another peace officer arrived. However, the situations are analogous, and the same principles govern.

In *People* v. *Walker*, 203 Cal.App.2d 552 [21 Cal.Rptr. 692], relied on by plaintiff, the arresting officer gave the defendant some sobriety tests and concluded he was under the influence of alcohol. The officer had not seen the defendant commit the alleged offense of drunk driving, and the arrest was therefore determined to be unlawful. Other persons at the scene told the officer that the defendant's car had been weaving from one side of the road to the other before it collided with a parked car and came to a stop; but it does not appear that anyone had sought to make a citizen's arrest or detain the offender until the police arrived or, as occurred in the present case, that another officer had witnessed the offender's actions and "stopped" him.

The judgment is reversed.

Traynor, C. J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

Respondent's petition for a rehearing was denied February 19, 1969.