[Civ. No. 24925. Third Dist. Aug. 25, 1986.]

GERALD JAMES PADILLA, Plaintiff and Appellant, v.
GEORGE E. MEESE, as Director, etc., Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to rule 976.1 of the California Rules of Court, The Reporter of Decisions is directed to publish all portions of this opinion except Part I.

## Counsel

William Cole for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Charles C. Kobayashi and Marybelle D. Archibald, Deputy Attorneys General, for Defendant and Respondent.

## Opinion

**SPARKS, J.**—In this case we first consider whether, for purposes of a misdemeanor arrest for drunk driving, a vehicle must be moved in the presence of the arresting officer in order for the offense to occur in his presence. We hold that the vehicle must be moved. We next consider whether the preventative actions taken by a state inspector at an agricultural inspection station against a drunk driver constituted a lawful citizen's arrest. We hold that the inspector's actions constituted a valid arrest even though he was confused about the technical requirements of a citizen's arrest.

After an administrative hearing the Department of Motor Vehicles rendered a decision suspending the driving privilege of appellant Gerald James Padilla pursuant to the implied consent law. (Veh. Code, § 13353.) The suspension followed appellant's refusal to submit to a chemical test to determine his blood alcohol level after an arrest for driving while under the influence of alcohol. (Veh. Code, § 23152.) Plaintiff unsuccessfully sought a writ of administrative mandate in the Superior Court of El Dorado County. He appeals from a judgment denying his petition contending that the department erred in denying his request for a continuance of the administrative hearing. He further contends that he was not lawfully arrested and therefore

his license may not be suspended. For the reasons which follow, we reject these contentions and shall affirm the judgment.

## FACTS

The facts necessary for consideration of the issues on appeal are relatively straightforward. Mitch Miller is an inspector for the Department of Food and Agriculture. On New Year's morning, January 1, 1984, he was working at the Meyers Inspection Station near South Lake Tahoe when a citizen drove in and complained of the erratic driving of a person in a white Chevrolet pickup truck. The citizen reported that the truck had turned onto a side street, to which he pointed. Two or three minutes later Miller observed plaintiff drive his white Chevrolet pickup truck off the sidestreet and into the inspection station. Plaintiff stopped and told Miller, "I'm no California," or "I'm not a Californian." Miller could smell the odor of alcohol on plaintiff's breath and noted that his speech was slurred. He believed that plaintiff had been drinking too much.

The question of the validity of plaintiff's arrest arises because Miller appeared confused about the legal definition of a citizen's arrest. He testified that he had been advised by California Highway Patrol personnel that if he wanted to make an arrest of a drunk driver at the inspection station it would have to be a citizen's arrest. He had been instructed by the patrol that he should simply instruct the person to park or if that was not possible to write down the license number and report it. He understood that his authority as a peace officer only extended to enforcement of the food and agriculture laws, and he believed he was acting as a private citizen in taking the actions in this case. But he also testified that it is not his procedure to make a citizen's arrest, and that he did not intend to arrest plaintiff. Nevertheless, he informed plaintiff that he believed he had been drinking too much and told him to pull over and park. Plaintiff complied.

Approximately two minutes later Officer Nagel, of the California Highway Patrol, arrived on the scene in response to Miller's call. He went to the pickup where he observed plaintiff sitting in the driver's seat with the engine running. Nagel formed the opinion that plaintiff was intoxicated, and that opinion was amply supported by the evidence. Based upon information received from Miller, and his observation that plaintiff was the sole occupant and was sitting behind the wheel of the vehicle with the engine running, Nagel placed him under arrest. Thereafter plaintiff was advised of the requirement that he submit to a chemical test to determine his blood alcohol level and he refused to submit to such a test. Plaintiff's driving privilege was suspended based upon that refusal.

DISCUSSION

I*

. . . . . . . . . . . . . . . . . . . . . . .

II

Plaintiff contends that his arrest was unlawful and as a consequence his suspension cannot stand. At an implied consent hearing there are four issues tendered: (1) whether the peace officer had reasonable cause to believe the person had been driving a motor vehicle in violation of Vehicle Code section 23152 or 23153 (colloquially referred to as drunk driving); (2) whether the person was placed under arrest; (3) whether the person refused to submit to or did not complete a chemical test; and (4) whether the person had been told that his or her driving privilege would be suspended upon a failure or refusal to submit to or complete the test. (Veh. Code, § 13353, subd. (c)(1), now subd. (b).) There was ample evidence to support the department's findings with respect to issues (1), (3) and (4). Officer Nagel's personal observations of plaintiff reasonably led him to suspect plaintiff was intoxicated. The fact that plaintiff was alone and behind the wheel of the truck with the engine running at an isolated location, together with Miller's report to the officer, supported the reasonable belief that plaintiff had driven in his intoxicated condition. (*People* v. *Hanggi* (1968) 265 Cal.App.2d Supp. 969, 972 [70 Cal.Rptr. 540]; see also *People* v. *Wilson* (1985) 176 Cal.App.3d Supp. 1, 9 [222 Cal.Rptr. 540].) Nagel testified that he advised plaintiff of the requirement that he submit to a test and that he would have his driving privilege suspended for failure to do so. Plaintiff does not contend that the evidence does not support these findings. Instead, his sole claim is that he was not lawfully arrested. Since a driver's license cannot be suspended under the implied consent law if the arrest was unlawful (*Buttimer* v. *Alexis* (1983) 146 Cal.App.3d 754 at p. 758 [194 Cal.Rptr. 603]), we turn to that contention.

 Plaintiff's contention that his arrest was unlawful has two aspects. He first asserts that his detention by Miller was illegal because as an agricultural inspector Miller's authority does not extend to enforcement of traffic laws. He next claims that Officer Nagel could not properly arrest him because he did not commit the offense in the officer's presence. The arguments, and their resolution, are interrelated.

---

*See footnote, *ante,* page 1022.

We first agree that, viewed in isolation, Officer Nagel had no authority to arrest plaintiff. Plaintiff's offense was a misdemeanor. (Veh. Code, § 23152.) A peace officer may make a warrantless arrest for a misdemeanor whenever "he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence." (Pen. Code, § 836.) Vehicle Code section 23152, subdivision (a) provides that it is misdemeanor offense "for any person who is under the influence of an alcoholic beverage . . . to drive a vehicle." As the court noted in *Henslee* v. *Department of Motor Vehicles* (1985) 168 Cal.App.3d 445 [214 Cal.Rptr. 249], "an essential element of this offense is the act of driving an automobile. ■ Accordingly, an arrest for misdemeanor drunk driving is unlawful unless the officer was present when such driving occurred." (*Id.*, at p. 451, citations omitted.) There is no question Officer Nagel had reasonable cause to believe this offense had been committed. The issue is whether he was present during its commission. ■ The requirement that the crime be committed in the officer's presence is construed liberally: it is sufficient if the acts became known to the officer through his sensory perceptions. (*Pate* v. *Municipal Court* (1970) 11 Cal.App.3d 721, 725 [89 Cal.Rptr. 893].) "Whether the offense is committed in the officer's presence is to be determined by the events observable to the officer at the time of the arrest. 'If the officer cannot testify, based on his or her senses, to acts which constitute every material element of the misdemeanor, it cannot be said that the officer has reasonable cause to believe that the misdemeanor was committed *in his presence.*'" (*People* v. *Welsch* (1984) 151 Cal.App.3d 1038, 1042 [199 Cal.Rptr. 87], citation omitted, italics in original.) ■ In order to perceive the act of illegally driving a vehicle while under the influence of intoxicating liquor the officer must be able to detect the driving through one of his senses. Thus in order to make a valid arrest for misdemeanor drunk driving it is necessary that the officer be present at the scene where the driving occurred so that he can perceive it. (*Henslee* v. *Department of Motor Vehicles*, *supra*, 168 Cal.App.3d at p. 451.)

This poses the question of what constitutes driving within the meaning of the statute. Although the term "drive" is not defined in the Vehicle Code, most courts construing similar statutes have held that the term "requires that the vehicle be in motion in order for the offense of drunk driving to be committed." (Annot., What Constitutes Driving, Operating, or Being in Control of Motor Vehicle for Purposes of Driving While Intoxicated Statute or Ordinance (1979) 93 A.L.R.3d 7, 15.) Thus, in *People* v. *Jordan* (1977) 75 Cal.App.3d Supp. 1, 7-8 [142 Cal.Rptr. 401], the court held that the term "drive" means to steer or control a vehicle in motion. The court left open the question whether the statute would be violated "if an intoxicated person is found behind the steering wheel, the engine is running, but there is no proof that the vehicle was in motion." (*Id.*, at p. 8, fn. 3.) That

question was addressed in *People* v. *Engleman* (1981) 116 Cal.App.3d Supp. 14 [172 Cal.Rptr. 474]. There late one night officers found the defendant asleep behind the wheel of his car, which was parked on the shoulder of the road. Although the engine of the car was running, it was in parking gear. Defendant was arrested for drunk driving and given a breath test which he failed. The test results were admitted into evidence at his trial. On appeal to the appellate department of the superior court, defendant argued that the test results were inadmissible because they were the product of an illegal arrest. The court agreed: "A peace officer may make a lawful warrantless arrest for a misdemeanor only if he has reasonable cause to believe that it is being committed in his presence. (Pen. Code, § 836, subd. 1.) Defendant did not drive his car in the presence of the officers and therefore could not be validly arrested for [drunk driving]." (*Id.*, at p. 19.) The issue next arose in *Henslee* v. *Department of Motor Vehicles, supra,* 168 Cal.App.3d 445. There an officer came upon a vehicle at 2:15 a.m. parked in the street facing in the wrong direction. Although the engine was running and the headlights were on, the driver was passed out. When the officer opened the door and attempted to arouse the driver, she attempted to drive away. The car moved a few inches before the officer physically prevented her from proceeding. The driver's license was suspended for her refusal to submit to testing and the only question on appeal was whether she drove in the presence of the arresting officer, thereby subjecting herself to a lawful warrantless arrest. The court held that "the term 'drive' within the meaning of [Vehicle Code section 23152, subdivision (a)] includes the situation where . . . an intoxicated individual actively asserts control over a vehicle and takes every step necessary to resume travel along the public road." (*Id.*, at pp. 451-452.)[1] Although the *Henslee* court did not find the decision in *Engleman* to be persuasive, it nevertheless did distinguish it factually. The distinction was said to be that in *Engleman* there was no evidence that defendant attempted to operate the vehicle in the presence of the officers, whereas in the case under review the driver "actively placed the car in 'drive' and would have continued but for the officer's quick actions." (*Id.*, at p. 453.) The better distinction, however, is that in *Henslee* the driver moved the car in the presence of the officer, whereas no such movement occurred in *Engleman*.

---

[1]This definition is the one normally given to statutes employing the term "operate" rather than "drive." "The reason that the term 'operating' is broader than driving is that, as defined in nearly all of the cases, operating does not require that the vehicle be in motion. Thus, it has been held that the term 'operate' is not limited to moving a vehicle from one place to another, that a person may be convicted of operating a motor vehicle without it necessarily being shown that the automobile was actually in motion or even had the engine going, and that 'to operate' is not limited to a state of motion, but also includes, under the management theory, stops and parking on the highway as they are to be fairly regarded as a necessary incident to the operation." (Annot., What Constitutes Driving, Operating, or Being in Control of Motor Vehicle for Purposes of Driving While Intoxicated Statute or Ordinance, *supra,* 93 A.L.R.3d at p. 16, fns. omitted.)

It is true that the driver in *Henslee* only moved the car slightly. But the movement need not be extensive; even a matter of a few inches will suffice to constitute driving. In our view, if the driver does not move the vehicle in the officer's presence, the offense is not committed in his presence. Here Officer Nagel conceded that no driving occurred in his presence; the car, although running, was not moved. We are thus constrained to agree that the offense did not occur in Officer Nagel's presence for purposes of Penal Code section 836. (See *People* v. *Welsch, supra,* 151 Cal.App.3d at p. 1042; *In re Alonzo C.* (1978) 87 Cal.App.3d 707, 712 [151 Cal.Rptr. 192].)[2]

In recognition of the substantial danger to the public health and safety which drunk driving presents, the Legislature has provided two statutory exceptions to the "presence" requirement for misdemeanor arrests. Vehicle Code section 40300.5 provides that an officer may make a warrantless arrest of a person who is believed to have driven under the influence of alcohol, drugs, or both, when the person was involved in an accident or was observed by the officer in or about a vehicle which is obstructing a roadway. These provisions do not apply to plaintiff because he was not involved in an accident, and there was no evidence that his truck was obstructing a roadway.[3]

While it appears that Penal Code section 836 and Vehicle Code section 40300.5 did not give Officer Nagel the authority to arrest plaintiff without

---

[2]In *McDonald* v. *Justice Court* (1967) 249 Cal.App.2d 960, 963 [58 Cal.Rptr. 29] (disapproved on another ground in *People* v. *Superior Court (Hawkins)* (1972) 6 Cal.3d 757, 765, fn. 7 [100 Cal.Rptr. 281, 493 P.2d 1145]) we held, without analysis, that officers had sufficient grounds for a misdemeanor drunk driving arrest when they arrived within minutes after a drunken driver had crashed into a parked car. When the officers arrived at a scene the vehicle was resting partly on the lawn and sidewalk, and the defendant was behind the wheel in an injured and obviously intoxicated condition. We inferentially found that the officers were present when the crime was committed. (See *People* v. *Ashley* (1971) 17 Cal.App.3d 1122, 1126, fn. 4 [95 Cal.Rptr. 509].) But there was no evidence that car was ever moved in the presence of the officers. Nor was there any evidence that the injured driver, who was bleeding from the head, nose and mouth, had taken any steps to resume travel or even that the vehicle was capable of movement. *McDonald* confuses the requirement that the misdemeanor offense be committed in the officer's presence with the related but distinct requirement that the officer have probable cause to believe the person to be arrested had driven the vehicle while intoxicated. Since *McDonald* cannot withstand scrutiny on that point, we decline to follow it.

[3]In any event, this latter portion of section 40300.5 was added and became effective after plaintiff's offense. (Stats. 1984, ch. 722, § 1.) In the 1984 legislation the Legislature said: "The Legislature finds and declares that driving while under the influence of alcohol or drugs continues to pose a substantial danger to public health and safety, injuring over 65,000 people per year and killing an additional 2,400. Given the severity of the conduct involved, the exception in Section 40300.5 of the Vehicle Code from the general requirements of Section 836 of the Penal Code should be expanded to cover other instances in which the officer has reasonable cause to believe that the person to be arrested had been driving while under the influence of alcohol, drugs, or both." (Stats. 1984, ch. 722, § 2.)

a warrant, this conclusion does not end the matter. ▉ An arrest is more than a transient momentary incident; it is a continuous transaction. (*Freeman v. Dept. Motor Vehicles* (1969) 70 Cal.2d 235, 238 [74 Cal.Rptr. 259, 449 P.2d 195]; *People v. Harris* (1967) 256 Cal.App.2d 455, 459-460 [63 Cal.Rptr. 849], disapproved on an unrelated ground in *Mozzetti v. Superior Court* (1971) 4 Cal.3d 699, 703 and 712 [94 Cal.Rptr. 412, 484 P.2d 84].) Thus the validity of an arrest is not compromised simply because the transaction is commenced by one officer but completed by another, for any person making an arrest may summon as many persons as he deems necessary to aid him. (Pen. Code, § 839.) This provision authorizes the delegation of the physical act of taking an offender into custody. (*Freeman v. Dept. Motor Vehicles, supra,* 70 Cal.2d at p. 238.) In *Freeman* a deputy sheriff stopped a suspected drunk driver and summoned a highway patrol officer who placed him under arrest. The arrest was lawful. (*Id.,* at p. 239.) In *Packer v. Sillas* (1976) 57 Cal.App.3d 206 [128 Cal.Rptr. 907], highway patrol cadets made a vehicle stop and pursued the driver when he fled in his car. They lost sight of the vehicle, but then located it in a driveway. A highway patrol officer came to the scene and upon learning the identity of the driver arrested him. The arrest was lawful. (57 Cal.App.3d at pp. 214, 219.)

This rule also applies to citizen's arrests. ▉ A citizen may make an arrest for a misdemeanor committed in his presence. (Pen. Code, § 837.) In doing so he may delegate the act of taking the suspect into physical custody. In *People v. Harris, supra,* 256 Cal.App.2d 455, a citizen observed the defendant commit a misdemeanor hit and run. He followed him, stopped him, and asked him to wait while he sent another person to find an officer. When an officer arrived the situation was explained and he arrested the defendant. The arrest was lawful. (256 Cal.App.2d at p. 460.) In *People v. Sjosten* (1968) 262 Cal.App.2d 539 [68 Cal.Rptr. 832], a citizen observed the defendant prowling in her neighborhood. She called the police and asked him to arrest the defendant. The arrest was lawful. (262 Cal.App.2d at p. 543.) In *Green v. Department of Motor Vehicles* (1977) 68 Cal.App.3d 536 [137 Cal.Rptr. 368], a citizen observed the suspect driving in an unlawful and erratic manner. He followed her until she stopped in a private driveway whereupon he left to report the incident to a police officer. Officers at the scene believed the suspect was drunk and had been driving in that condition, and they had the citizen transported to the scene where he said he wished to have the suspect arrested. The arrest was lawful. (68 Cal.App.3d at p. 541.) In *People v. Johnson* (1981) 123 Cal.App.3d 495 [176 Cal.Rptr. 684], a citizen reported a prowler. Officers responding located the suspect and placed him in custody. They took him to the citizen's home where the citizen identified him and made a citizen's arrest. The arrest was lawful. (123 Cal.App.3d at p. 499.) The Court of Appeal noted that the delegation of the physical act of arrest need not be express, but may be implied from

the citizen's act of summoning an officer, reporting the offense, and pointing out the suspect. (*Ibid.*)

The actions commenced by Miller and completed by Nagel in this case conform in all significant respect to a standard citizen's arrest with delegation of the physical arrest to the highway patrol officer. Moments before the incident a citizen had complained to Miller about plaintiff's erratic driving. Miller observed plaintiff drive his truck into the inspection station, and from his speech and the odor of alcohol about him Miller reasonably concluded he was in violation of Vehicle Code section 23152. Miller told plaintiff that he had been drinking too much to drive and told him to pull over and park. He summoned Nagel and upon his arrival told him of his conclusions. Nagel performed the physical act of arrest. In viewing the entire transaction rather than focusing upon Nagel's participation in isolation, we conclude the arrest was valid under the authorities we have cited above.

Plaintiff contends, however, that Miller had no authority to detain him because his duties were limited to enforcement of the food and agriculture laws. Penal Code section 836.5, subdivision (a) provides: "A public officer or employee, when authorized by ordinance, may arrest a person without a warrant whenever he has reasonable cause to believe that the person to be arrested has committed a misdemeanor in his presence which is a violation of a statute or ordinance which the officer or employee has the duty to enforce." Food and Agriculture Code sections 5341 through 5348, give agricultural inspectors the authority to enforce food and agriculture laws; they do not purport to give such inspectors the duty or authority to enforce motor vehicle laws. Plaintiff therefore argues that Miller could not lawfully detain him.

In this case we need not, and therefore do not, consider whether Miller's authority as an agricultural inspector permitted him to detain plaintiff. Where an officer acts outside the scope of his statutory authority an arrest is not necessarily rendered unlawful. Such an officer is to be regarded as a private citizen and the arrest may be lawful as a citizen's arrest. (*People* v. *Aldapa* (1971) 17 Cal.App.3d 184, 188 [94 Cal.Rptr. 579]; *People* v. *Martin* (1964) 225 Cal.App.2d 91, 93-94 [36 Cal.Rptr. 924].)[4] As we have noted above, from start to finish this case fits squarely within the procedures, established by the authorities, for a lawful citizen's arrest.

---

[4]The distinction involves whether the officer is entitled to the statutory civil immunity provided to officers in the scope of their duties by Penal Code section 836.5, subdivision (b). Since in this case there is no question of civil liability and/or immunity presented, and we conclude that the arrest was valid as a citizen's arrest, we have no reason to consider whether the arrest should be considered one by a public officer or employee.

The sole factor that would cast any doubt upon the validity of Miller's actions as a citizen's arrest was his somewhat confused understanding of the nature of an arrest. He testified that he had been advised that he had no authority to make an arrest as an inspector and would have to act as a private citizen. He continued "and that just by simply asking a person to park or if that's not possible to write down the license number and call. That is our procedure . . ." He testified that he believed he was acting as a private citizen. He also testified that he did not intend to arrest plaintiff.

From Miller's testimony it may be reasonably inferred that he did not understand that an arrest does not necessarily require taking the suspect into actual physical custody. From his actions it is clear that he intended to detain plaintiff, if possible, and to delegate the act of taking physical custody to a highway patrol officer. The only "arrest" which Miller did not intend to make was the actual act of taking plaintiff into physical custody. In considering whether a citizen's arrest was made, and the legality thereof, it is the substance and not any "magic words" which we must consider. (See *Green* v. *Department of Motor Vehicles, supra,* 68 Cal.App.3d at pp. 541-542.) In substance Miller made a citizen's arrest and delegated the act of taking physical custody to Nagel. His definitional misunderstanding does not render that arrest unlawful.[5]

The judgment is affirmed.

Regan, Acting P. J., and Evans, J., concurred.

A petition for a rehearing was denied September 18, 1986, and appellant's petition for review by the Supreme Court was denied November 25, 1986.

---

[5]*Dyas* v. *Superior Court* (1974) 11 Cal.3d 628 [114 Cal.Rptr. 114, 522 P.2d 674], relied upon by plaintiff, is inapposite. There a city housing authority's uniformed patrolman, acting under color of authority, conducted a search of the defendant. The search was illegal as it was without probable cause. (11 Cal.3d at pp. 632-633.) This, of course, means that the search was unlawful whether the patrolman was acting as a public officer or as a private citizen. The only question was whether the exclusionary rule applied, and the Supreme Court refused to allow the prosecution to admit the illegally seized evidence on the ground that the patrolman was only a private citizen. The distinction is that the evidence in *Dyas* was the product of an illegal search whether or not the patrolman was a public officer or a private citizen and the only issue was the scope of the exclusionary rule. In contrast, here a public offense was committed in Miller's presence and he had the right to make a lawful arrest as a public officer if it was within the scope of his duties (Pen. Code, § 836.5, subd. (a)), and if it was beyond his duties then as a private citizen (Pen. Code, § 837). (See *People* v. *Aldapa, supra,* 17 Cal.App.3d at p. 188; *People* v. *Martin, supra,* 225 Cal.App.2d at pp. 93-94.)