2005 OK CIV APP 92

**Jeffrey B. BURKE, Plaintiff/Appellant,**

v.

**STATE of Oklahoma, ex rel., DEPART-MENT OF PUBLIC SAFETY, De-fendant/Appellee.**

No. 101,217.

Court of Civil Appeals of Oklahoma, Division No. 4.

Aug. 30, 2005.

Certiorari Denied Nov. 14, 2005.

Charles L. Sifers, Oklahoma City, OK, for Plaintiff/Appellant.

Kenneth T. Linn, Oklahoma Department of Public Safety, Oklahoma City, OK, for Defendant/Appellee.

JERRY L. GOODMAN, Presiding Judge.

¶ 1 Plaintiff, Jeffrey Burke, appeals from the trial court's August 24, 2004, decision sustaining an order by the Department of Public Safety (DPS) revoking his driver's license. The issue on appeal concerns the applicability of Oklahoma's "implied consent" law if a driver is arrested pursuant to a "citizen's arrest" by a private citizen who sought assistance from a police officer in informing the driver of the arrest and taking him into custody. Based on our review of the record, the parties' briefs, and the applicable law, we reject Plaintiff's challenge to the validity of the citizen's arrest, and find the arrest was sufficient to invoke the provisions of 47 O.S.2001, § 751. We therefore affirm the trial court's order.

FACTS

¶ 2 The evidence at trial established facts that are essentially undisputed. On the night of December 20, 2003, Plaintiff was driving on an interstate highway in Oklahoma City. Driving behind him was a private

citizen, Virginia Hagen, who testified that the vehicle being driven by Plaintiff was "all over the road ... completely out of the lanes" and was "very erratic[ ] ... I thought he was going to kill somebody." Hagen called 911 on her cell phone. She described to a dispatcher what she had observed and asked for a police officer's assistance. Hagen testified she continued to follow the car, staying on the phone with the dispatcher and describing what was happening.

¶ 3 Hagen testified Plaintiff exited the highway, stopped his car in a park, drove back around to where she had stopped her car, and rolled down his window. Still on the telephone with the dispatcher, Hagen rolled down her window as well. Plaintiff questioned why Hagen was following him, and, after she told him that he was intoxicated and needed to get off the road, he started yelling at her. She said his speech was slurred, and he was belligerent. Though she could not smell alcohol, she stated they were both in their cars and the wind was blowing. She stated Plaintiff then drove away, and, with Hagen still following him, stopped at a nearby restaurant. He got out of his car, and was "staggering really bad ... he went inside the place, and that's when the police showed up." Hagen said she remained in her car and pointed Plaintiff out to Police Officer David Steiner when Plaintiff came out of the restaurant a few minutes later with an order of food "to go."

¶ 4 Officer Steiner testified that, after Hagen identified Plaintiff, he and a fellow officer approached Plaintiff to talk with him. He stated Plaintiff was noticeably unsteady on his feet, his speech was slurred, and he smelled strongly of "alcoholic beverage." Based on those observations, Officer Steiner said that he believed Hagen had "probable cause" to arrest Plaintiff for driving under the influence. Steiner allowed Plaintiff to set his food on his car, but he then had him sit in Steiner's patrol car while Steiner went over to Hagen, who was still in her car, and asked if she was placing Plaintiff under citizen's arrest. Hagen said "yes"; Steiner then filled out two citation forms—one for driving under the influence (DUI), and another for straddling lane lines. Hagen signed the citations, and Steiner returned to the patrol car. Steiner also testified that, after he had Plaintiff sit in the patrol car, but before he went back to Hagen's car, he informed Plaintiff that he was not currently under arrest.

¶ 5 Steiner testified he advised Plaintiff that he had been arrested by Hagen, and gave him the citations which Hagen had signed. Steiner then gave Plaintiff an "implied consent advisory"—which the parties agree was sufficient under the law at that time. Plaintiff refused to submit to a blood or breath test, resulting in DPS's automatic revocation of his license pursuant to 47 O.S. 2001, § 753.[1] Following a DPS hearing that upheld the revocation, Plaintiff sought review in district court pursuant to 47 O.S.2001, §§ 755 and 6–211. The trial court sustained DPS's six-month revocation of Plaintiff's license.[2]

¶ 6 Plaintiff appeals. He asserts on appeal that his arrest was not valid as a matter of law, and therefore could not trigger the implied consent provisions of Oklahoma statutes so as to form a basis to revoke his license. Aside from the validity of the citizen's arrest, however, Plaintiff does not challenge the fulfillment of all other conditions relevant to applying the implied consent statutes, 47 O.S.2001, and Supp.2004, §§ 751 through 761.[3]

---

1. Title 47 O.S.2001, § 753 states, in relevant part:

 The Commissioner of Public Safety, upon the receipt of a sworn report of the law enforcement officer that the officer had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public roads ... of this state ... and that the person had refused to submit to the test or tests, shall revoke the license to drive ... for a period as provided by Section 2–605.1 of this title....

2. The court stayed the running of the revocation and required that Plaintiff be issued a temporary driver's license during the pendency of this appeal.

3. Other than a valid arrest, the remaining conditions are: (1) that there was probable cause for Hagen to believe Plaintiff was driving under the influence of alcohol; (2) that Plaintiff was informed that his license to drive would be revoked or denied if he refused to submit to a test; and (3) that Plaintiff refused to take the test. *See Smith v. State ex rel. Dept. of Public Safety*, 1984

## STANDARD OF REVIEW

 ¶ 7 The parties agree that a valid arrest is a prerequisite to application of the implied consent law. *Smith v. State ex rel. Dept. of Public Safety*, 1984 OK 16, ¶ 3, 680 P.2d 365, 367 (valid arrest necessary to invoke statutory provisions giving a police officer the right to request a driver to submit to a chemical test for blood alcohol). They further agree that the question presented for review on appeal is one of law, requiring interpretation of a statute as it applies to undisputed facts. As such, our standard of review is de novo, or without deference to the decision of the lower court. *See Fanning v. Brown*, 2004 OK 7, 85 P.3d 841.

## ANALYSIS

 ¶ 8 Essentially, Plaintiff argues that, even if Hagen had authority and probable cause to arrest him for DUI or actual physical control (APC) of his motor vehicle, the fact that Hagen did not physically complete the arrest herself—but instead relied on a uniformed police officer to do so—invalidates the arrest and therefore allowed him to refuse to take a breath test without automatic revocation of his license. Plaintiff does not contend that Officer Steiner had no right to detain him for public intoxication, nor does he claim that Steiner or Hagen had no reasonable grounds to suspect him of DUI. Rather, he complains that Hagen's failure to physically complete the arrest by personally restraining his freedom and telling him he was under arrest invalidates the entire arrest and excuses him from the implied consent provisions of Oklahoma law.[4] He argues in his appellate brief that the arrest was not valid because the police officer did not have the crime of DUI or APC committed in his presence, and because a citizen's arrest cannot be performed by having a citizen sign traffic tickets where the citizen did not take a suspect into custody or advise him of why he was being arrested, prior to the arrest.

¶ 9 In Oklahoma, the authority to arrest, either as a police officer or as a private citizen, is controlled by statute. See 22 O.S. 2001, and Supp.2004, §§ 186 through 209. "Arrest" is defined in 22 O.S.2001, § 186 as "the taking of a person into custody, that he may be held to answer for a public offense." An arrest is accomplished by "actual restraint" of the person or "by his submission to the custody" of an officer. 22 O.S.2001, § 190. An arrest may be effected by "a private person," 22 O.S.2001, § 187, for, among other things, "a public offense committed or attempted" in the presence of the person. 22 O.S.2001, § 202.

¶ 10 Section 203 states that the private person "must, before making the arrest, inform the person to be arrested of the cause thereof, and require him to submit, except when he is in actual commission of the offense or when he is arrested on pursuit immediately after its commission." In addition, under § 205, the person "who has arrested another for the commission of a public offense, must, without unnecessary delay, take him before a magistrate or deliver him to a peace officer."

¶ 11 Nothing in the statutes expressly prohibits a private citizen from procuring the aid of an on-duty police officer, acting within the scope of the officer's jurisdiction, in making the arrest for or on behalf of the citizen. In fact, the language of §§ 190 and 205 suggests that it is not necessary at all for the private citizen to actually physically restrain the person who is being arrested; rather, simply submitting the individual to an officer's custody—an act which conceivably could be accomplished simply by pointing out or identifying the arrestee to an officer—is sufficient.

¶ 12 Although there is no Oklahoma Supreme Court case that directly addresses this issue, a somewhat analogous situation was addressed by the Court of Civil Appeals in *Dahl v. State ex rel Dept. of Public Safety*, 2002 OK CIV APP 15, 38 P.3d 941. There,

---

OK 16, ¶ 6, 680 P.2d 365, 368; *McKeever v. State ex rel. Dept. of Public Safety*, 2001 OK CIV APP 79, ¶ 9, 25 P.3d 301, 304.

**4.** At the hearing before the trial court, Plaintiff's counsel argued: "The fact that she [Hagen] could have [restrained Plaintiff] if she would

have is irrelevant. [Officer Steiner] could have done it. He could have walked her up, said, 'Yell at him through that window he's under arrest,' and I wouldn't be here today. But that didn't happen."

we interpreted state statutes governing requests for aid among fellow peace officers. This court found valid the arrest of a driver by an Oklahoma Highway Patrol trooper who did not arrive at the scene to make an arrest until after the driver was stopped by a municipal police officer acting at the trooper's request. The local officer had been contacted by the OHP after a reckless driving report was made concerning the driver. Because the trooper was unable to get to the scene immediately, he had requested assistance from the local officer in locating and stopping the driver. The officer had observed the driver's erratic driving but was outside of his jurisdiction when the stop was made.

¶ 13 Upholding the trooper's arrest of the driver as valid, we reasoned in *Dahl* that the officer, in acting upon the request of the OHP trooper, "derived the right to stop Dahl for the benefit of the OHP." 2002 OK CIV APP 15, ¶ 14, 38 P.3d at 945. We looked to the entire sequence of events in finding that a valid arrest occurred and in sustaining revocation of Dahl's driver's license. We also relied on a decision by the Court of Criminal Appeals, *Geary v. State*, 1985 OK CR 141, 709 P.2d 690, in which that Court, also looking at the entirety of the transaction, deemed valid an arrest of a driver by two municipal police officers who were outside of their jurisdiction but were acting at an OHP officer's request when the arrest was made.

¶ 14 Similarly, in *Clarkson v. State ex rel Dept. of Public Safety*, 1994 OK CIV APP 39, 872 P.2d 411, this court sustained an arrest by an on-duty municipal officer based on the communications and observations of a fellow, off-duty officer who had observed the driver driving erratically, reported it, and requested that a uniformed officer be dispatched to the scene. Though the "fellow officer rule" was the basis for upholding the arrest in that case, again we looked to the entire sequence of events in analyzing whether a valid arrest was made.

¶ 15 In a case with facts very similar to the one under review, a California appellate court found a citizen properly "delegated" to an on-duty police officer the act of taking a suspect into physical custody for DUI. In *Green v. Department of Motor Vehicles*, 68 Cal.App.3d 536, 137 Cal.Rptr. 368 (1977), a citizen observed the suspect driving in an unlawful and erratic manner. He followed her until she stopped in a private driveway, whereupon he left to report the incident to a police officer. Officers proceeded to the scene and, after observing the driver in the car, believed she was drunk and had been driving in that condition. The citizen was then requested to return to the scene, told the officers he wished to complete a citizen's arrest, and, with the assistance of the officers, told the driver that he believed she was intoxicated and that he was arresting her "for drunk driving." He asked the officers to take her into custody and they did so.

¶ 16 The court held the arrest was lawful, finding the officers were acting as the "agents" of the citizen and looking to the "entire sequence of events," beginning when the citizen first enlisted the aid of the police officers, as constituting the arrest. *Id.* at 371. The court noted:

> Very wisely, [the private citizen] chose to enlist the aid of the police in effectuating the arrest rather than risking his own safety, and he did secure the aid of a police officer as promptly as possible.... It would appear ludicrous to hold that [the DMV] cannot protect the motoring public by suspending respondent's license based on the uncontradicted facts ... because [the citizen] was afraid to drag respondent out of her car and arrest her unassisted. This is not a case where the citizen observing the offense went about his other business and then later decided to effectuate an arrest. Rather, [the citizen left the scene after he] thought he had done all he needed to do after he related the circumstances [to the police officer]. When he was shortly thereafter recalled ... he came at once and effected the arrest personally with the aid of the police. His conduct was wholly lawful. *Common sense and the case law both agree that the private citizen effecting an arrest may summon the police to his aid.*

*Id.* at 371 (emphasis added). *See also Padilla v. Meese*, 184 Cal.App.3d 1022, 229 Cal. Rptr. 310 (1986)(citizen may make arrest for a misdemeanor committed in his presence and in doing so may delegate the act of taking the suspect into physical custody).

Coincidentally, California's statute governing citizens' arrests is virtually identical to Oklahoma's. *See* Cal. Pen.Code § 837 and 22 O.S.2001, § 202.[5]

¶ 17 We find the reasoning of the California court persuasive in the case under review and, consistent with the analysis of other decisions of this court which have taken into account the entire sequence of events, find that Hagen's arrest of Plaintiff was valid. Hagen observed Plaintiff driving erratically on a public highway and took immediate action to notify and seek assistance from the police. She then confirmed by his slurred speech and belligerence that he appeared to be intoxicated, and told him that he should not be driving in that condition. She remained at the scene at all times, and pointed him out to the police officers who had responded to her call and who had, themselves, observed his behavior. Hagen agreed that she wished to place Plaintiff under citizen's arrest, and—being understandably afraid to approach Plaintiff herself—accepted the officer's assistance in notifying him of his arrest and taking him into custody.

¶ 18 As noted, the police officer involved in the transaction also had smelled the odor of alcohol and observed other "symptoms" suggesting Plaintiff was intoxicated. Based on his own observances, he agreed to act on Hagen's behalf in completing the arrest. Viewing the entire sequence of events and the transaction as a whole, we reject Plaintiff's claim that his arrest was somehow unlawful because Hagen technically did not verbally inform him that she was placing him under arrest and then physically take him into custody.

¶ 19 Further, to the extent that Plaintiff contends he was entitled to refuse testing with impunity because he believed he had not been arrested for DUI because Hagen did not physically arrest him, such argument is not supported by the record. It is undisputed that police officer Steiner told Plaintiff that Steiner was executing a citizen's arrest for Hagen, and that he informed Plaintiff—both verbally and with a signed and written citation—what the grounds for the arrest were. It also is undisputed that Plaintiff acknowledged that he knew who Hagen was and that she was at the scene. Under the circumstances, Plaintiff had more than sufficient notice of the fact that he had been taken "into custody" so that he could be "held to answer" for the "public offense" of DUI. 22 O.S.2001, § 186.

¶ 20 Accordingly, we find that the arrest of Plaintiff was valid and properly invoked the provisions of the implied consent law. The trial court's decision sustaining DHS's revocation of Plaintiff's license is therefore affirmed.[6]

¶ 21 AFFIRMED.

RAPP, V.C.J., and STUBBLEFIELD, J., concur.

---

5. Both statutes provide that a private person may arrest another (1) for a "public offense committed or attempted" in the person's presence, (2) when the person arrested has committed a felony "although not in his presence," and (3) when a felony has been committed, and the person has "reasonable cause for believing the person arrested to have committed it."

6. Because we sustain the trial court's decision on grounds that the driver's license revocation was preceded by a valid citizen's arrest, it is unnecessary for us to address DPS's alternative contention that Officer Steiner made a valid arrest based on Plaintiff's alleged "actual physical control" of his vehicle.