**NOT FOR PUBLICATION**

JAN 11 2017

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARK A. MACKEY,<br><br>        Plaintiff-Appellant,<br><br>v.<br><br>DARREN MEYER, individually and in his official capacity as an employee of the California Highway Patrol,<br><br>        Defendant-Appellee. | No.   15-55186<br><br>D.C. No.<br>2:11-cv-03560-DMG-JC<br><br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted December 9, 2016
Pasadena, California

Before:  TASHIMA and PAEZ, Circuit Judges, and FRIEDMAN,[**] District Judge.

Mark Mackey ("Mackey") appeals the district court's summary judgment in

favor of California Highway Patrol ("CHP") Officer Darren Meyer ("Meyer") and

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Paul L. Friedman, United States District Judge for the District of Columbia, sitting by designation.

the denial of partial summary judgment in his favor. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo a district court's grant or denial of summary judgment, *see, e.g.*, *McCormack v. Herzog*, 788 F.3d 1017, 1029 (9th Cir. 2015), and we reverse and remand.

Mackey was arrested in 2011 while reading scripture outside the Department of Motor Vehicles' ("DMV") office in Hemet, California. A security guard asked Mackey to leave and he refused. DMV personnel then called the CHP and requested that Mackey be removed from the property. CHP dispatch called Meyer and relayed that there was a "preacher [] outside harassing customers waiting in line [at the DMV] . . . [who] has been asked to leave but is refusing." Upon arriving at the DMV, Meyer confirmed with the security guard that Mackey was the preacher who had refused to leave and then, without asking Mackey any questions, placed him under arrest.

Mackey filed suit against Meyer under 42 U.S.C. § 1983 alleging, *inter alia*, unlawful arrest in violation of the Fourth Amendment as well as false arrest or imprisonment under California state law. The parties filed cross-motions for summary judgment. Meyer argued that he was entitled to qualified immunity because under the circumstances there was probable cause for Mackey's arrest and, even if probable cause did not exist, he acted reasonably. Mackey sought partial

summary judgment in his favor on those two issues. The district court granted Meyer's motion and denied Mackey's.

**The Fourth Amendment Violation and Qualified Immunity**

"In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first prong asks whether the facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right[.]" *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)) (alterations in original). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Id.* at 1866 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

Probable Cause

First, Meyer violated Mackey's Fourth Amendment rights because he lacked probable cause to arrest Mackey for either California Penal Code § 602.1(b) ("Section 602.1(b)")—the violation for which he was arrested—or California Code of Regulations, Title 13, § 1860(a) ("Section 1860(a)")—the violation for which he was ultimately charged. "Probable cause exists when, under the totality of the circumstances known to the arresting officers . . . a prudent person would believe the suspect had committed a crime." *Dubner v. City & Cty. of S.F.*, 266 F.3d 959,

3

966 (9th Cir. 2001); *see also Crowe v. Cty. of San Diego*, 608 F.3d 406, 432 (9th Cir. 2010).

"[A] violation of [Section] 602.1[b] has two elements: (1) intentional interference, and (2) refusal to leave." *Dubner*, 266 F.3d at 966. Element one requires that an individual "intentionally interfere" with a business by "obstructing or intimidating those attempting to carry on business." Cal. Penal Code § 602.1(b). CHP dispatch told Meyer that Mackey was "harassing" customers at the DMV by preaching, but there was no evidence that Meyer had any knowledge of Mackey "intentionally interfer[ing] with the business of the [DMV]" prior to his arrival. *See Dubner*, 266 F.3d at 959. Upon arrival, Meyer encountered Mackey reading his bible aloud in a dirt patch, neither obstructing nor intimidating anyone in line. Meyer avers that Mackey was "yelling at the people waiting in line," "that there was obvious verbal confrontation between the group of men and the people standing in line," and that the "confrontation was heated and nearing a physical state." That version of events[1] is completely belied by video and audio footage[2] which does not reveal any confrontations whatsoever, and merely shows Mackey

---

[1] This includes facts alleged by other declarants submitted on behalf of Meyer.

[2] "[There] are no allegations or indications that the video [and audio] was doctored or altered in any way." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

4

reading the bible aloud somewhat apart from people standing in line. *See Scott v. Harris*, 590 U.S. 372, 380 (2007). As a result, with the information Meyer possessed, he lacked probable cause to arrest Mackey for a violation of Section 602.1(b). *See Dubner*, 266 F.3d at 967.

A violation of Section 1860(a) likewise has two elements: (1) a demonstration or gathering, and (2) a lack of a permit. With respect to element two, Meyer cannot establish probable cause as to Mackey's lack of a permit. Meyer and his colleagues stated they had previous experiences with groups preaching at the DMV without a permit, but that information is not specific enough to establish probable cause; nowhere does Meyer actually confirm that either he or his colleagues knew that their prior experiences had specifically involved Mackey previously preaching without a permit. The statement in Meyer's declaration that it "was clear" to him that Mackey lacked a permit is conclusory and contradicted by the complete lack of evidence that anyone informed him or that he inquired as to whether Mackey had a permit prior to arresting him. As a result, Meyer lacked probable cause for the arrest.

Clearly Established Law

Having determined that Meyer lacked probable cause for Mackey's arrest, we turn to the second prong of the qualified immunity analysis, i.e., whether the

5

law was clearly established at the time of the incident. In addressing that inquiry, the "'salient question . . . is whether the state of the law' at the time of an incident provided 'fair warning' to [Mackey] 'that [his] alleged conduct was unconstitutional.'" *Tolan*, 134 S. Ct. at 1866 (quoting *Hope*, 536 U.S. at 741) (alterations omitted). In the context of the Fourth Amendment, "if the officer's mistake as to what the law requires is reasonable, [then] the officer is entitled to the immunity defense." *Saucier*, 553 U.S. at 205.

Here, Meyer's mistake was unreasonable as both statutes at issue are clear on their face. First, no reasonable officer would arrest an individual without ensuring that individual did not have a permit under Section 1860(a). Second, it was objectively unreasonable for Meyer to think Mackey was obstructing or intimidating individuals based on the information relayed by the dispatcher in combination with what he witnessed upon arriving on the scene. We thus conclude that Meyer is not entitled to qualified immunity.

**State Law Claims**

In addition to Mackey's constitutional claims, he also seeks damages under California law for false arrest/imprisonment. The district court erred in its analysis of Mackey's false arrest/imprisonment claim by simply relying on its Fourth Amendment probable cause determination. In California, establishing that the

6

officer had probable cause under the Fourth Amendment is necessary, but insufficient, to establish that a warrantless misdemeanor arrest was lawful. *See, e.g.*, *Edgerly v. City & Cty. of S.F.*, 599 F.3d 946, 959 (9th Cir. 2010); *see also, Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990). Under California Penal Code § 836(a)(1) ("Section 836(a)(1)"), in order to effectuate a lawful warrantless arrest for a misdemeanor offense, an officer must have "probable cause to believe that the person to be arrested has committed [an offense] in the *officer's presence*." (emphasis added). "Whether the offense is committed in the officer's presence is to be determined by the events observable to the officer at the time of the arrest." *Padilla v. Meese*, 229 Cal. Rptr. 310, 312 (Ct. App. 1986) (quoting *People v. Welsch* 199 Cal. Rptr. 87, 90 (Ct. App. 1984)).

The relevant inquiry as to Mackey's state law claim, then, is whether Meyer's arrest complied with Section 836(a)(1). Here, the answer is no. As discussed *supra*, Meyer did not personally observe Mackey violating either Section 602.1(b) or Section 1860(a) because he did not witness any obstruction or intimidation by Mackey nor did he inquire whether Mackey lacked a permit.

This is not the end of the inquiry, however, as California has an analogue to qualified immunity. California Penal Code § 847(b)(1) "protects police officers from civil liability for false arrest or imprisonment arising out of an arrest *if the*

7

*arrest is lawful or the officer has reasonable cause to believe it was lawful.*"

(emphasis added). Because "this limitation on [warrantless misdemeanor arrests] was clearly established by statutory law, [Meyer] did not have 'reasonable cause to believe the arrest was lawful' under state law and [he is] not entitled to immunity from liability." *Edgerly*, 599 F.3d at 946 (quoting Cal. Penal Code § 847(b)(1)).

For the foregoing reasons, we reverse and remand for further proceedings consistent with this disposition.

REVERSED and REMANDED.